FILED

2010 OCT -4 PM 12: 52

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JAMES HILL, )
)
Plaintiff, )
)
v. ) CAUSE NO. 2 10 CV 393
)
CITY OF HAMMOND, INDIANA; )
FRANK DUPEY, RICHARD TUMILDALSKY, )
RAYMOND MYSZAK, MICHAEL SOLAN, )
)
Defendants. )

## COMPLAINT AND JURY DEMAND

Comes now Plaintiff James Hill by his counsel, MillerFisher Law LLC, Harper and Rogers, and People's Law Office, and hereby alleges as follows:

1. Plaintiff James Hill served 17 years and six months in jail and prison for crimes which he did not commit.

2. On November 18, 1980, James Hill was arrested for rape, unlawful deviate conduct and robbery of L.J.

3. On February 11, 1982, James Hill was convicted of these offenses, and on February 25, 1982, was sentenced to 35 years in prison.

4. James Hill was released from prison in May 1998.

5. On December 7, 2005, James Hill filed an Amended Petition for Post Conviction Relief, asserting, *inter alia*, that DNA evidence excluded Hill and his criminal co-defendant as participants in the attack on L.J.; that evidence that the victim L.J. had been hypnotized in 1980 after the incident had been suppressed by the State; and that other exculpatory evidence had been suppressed by the State.

1

6. On October 6, 2009, the Post Conviction Petition was granted and James Hill's conviction was vacated.

7. James Hill's arrest, detention, prosecution, convictions, and imprisonment were the product of unconstitutional and unlawful efforts by the defendant police officers, acting individually and in concert, pursuant to municipal policy and custom, to use any means necessary to gain a conviction. Acting individually and in concert, the Defendants and others deliberately failed to reveal exculpatory information relating to the hypnosis of the victim prior to any identification of Mr. Hill, failed to reveal other exculpatory information, failed to investigate other potential suspects in these offenses, and fabricated evidence from witnesses which was then presented at trial.

8. As a direct result of the Defendants' intentional acts and omissions, James Hill sustained injuries and damages, including, among others, the following: personal injuries; pain and suffering, severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression.

9. Beyond compensating James Hill for these continuing injuries and the more than seventeen years stolen from him, this action seeks to redress the unlawful municipal policies and practices pursuant to which the Defendants, acting under color of law both independently and in concert, violated his clearly established rights as guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the State of Indiana.

## JURISDICTION

10. This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over the claims arising out of violations of the United States Constitution and laws.

## VENUE

11. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Northern District of Indiana, Hammond Division, the judicial district in which the claims arose and in which all Defendants reside or conduct business.

## PARTIES

12. Plaintiff James Hill is, and at all times material to this Complaint was, a resident of the State of Indiana. He remains a citizen of Indiana and resides in Gary, Indiana.

13. Defendant City of Hammond ("Hammond") is a municipality that is a political subdivision of the State of Indiana, County of Lake, was the employer of the individual Defendants, and is responsible for the policies, practices and customs of the Hammond Police Department.

14. Defendant Frank Dupey was the police chief of the City of Hammond from 1976 to 1984, and was the person who had the ultimate responsibility to ensure that police officers in the Hammond Police Department received training in constitutionally adequate law enforcement practices concerning hypnosis and production of exculpatory evidence. He is sued in his official and individual capacities.

15. Defendant Richard Tumildalsky was at all relevant times in charge of personnel training for the Hammond Police Department and was responsible for ensuring that police officers in the Hammond Police Department received training in constitutionally adequate law enforcement practices concerning hypnosis and production of exculpatory evidence. He is sued in his individual capacity.

16. Each of the Defendants Michael Solan and Raymond Myszak (the "individual Hammond Police Defendants"), is an individual who was at all times material to this Complaint employed as an officer, sergeant, detective, and/or supervisor of the Hammond Police Department, and who performed the acts alleged in the scope of his employment and under color of state law. Each Defendant is named in his individual capacity.

## FACTS

17. L.J. was working as a cashier at a Martin Oil Company gas station in Hammond, Indiana, on Sunday, October 5, 1980, in the evening when two men entered the store. The taller of the two men, who was carrying a blue denim bag, produced what appeared to be a gun and demanded money from the cash drawer. L.J. gave him the money. The shorter man took bags of candy, cigarettes and auto accessories.

18. The two men then forced L.J. to leave the store and enter a vehicle. Initially, the shorter man drove while the taller man got into the back seat with L.J., forced her to perform oral sex, and then raped her. Then the shorter man got into the back seat, and also forced L.J. to perform oral sex and raped her. One of the men ejaculated.

19. After approximately 45 minutes the men let L.J. out of the car, and she sought help at a nearby residence, where she called her mother and then the police.

20. Sgt. Robert Townsell, who is now deceased, took L.J. back to the Martin gas station, and observed that she was very emotionally upset.

21. Officer Steven Ridgely came to the Martin gas station and obtained a description of the attackers from L.J. in which she described the taller of the two as six foot two inches in height and weighing two hundred pounds.

22. L.J. was then taken to St. Margaret's Hospital by her mother, where a nurse treated L.J. and processed a rape kit, including vaginal and rectal swabs, and samples of her hair, blood and saliva. The rape kit was picked up by an evidence technician and submitted to the Northwest Indiana Toxicology Laboratory for testing.

23. When the rape kit was examined, it was determined that semen had been deposited in L.J.'s body and on her clothing by the rapist.

24. Fingerprints were found and processed from the Martin gas station. None of these prints matched James Hill.

25. L.J. was taken to the Gary Police Department station the next day, October 6, 1980, where Gary police officer Karen Gibson showed her photographs of potential suspects. At this time L.J. could make no identification of any suspects.

26. Later that day, Townsell took L.J. to the Hammond Police Department station and showed her photographs.

27. Subsequently defendant officer Raymond Myszak, with the cooperation and agreement of other Hammond Police Department Officers, including Robert Townsell and Michael Solan, hypnotized L.J. at the Hammond police station.

28. Before she was hypnotized, L.J. had made no identification of James Hill.

29. No police officers had recorded a detailed statement from L.J. concerning the attack prior to the time she was hypnotized.

30. On October 19, 1980, police located the vehicle used in the rape of L.J., The car was processed for fingerprints but none of the prints which were recovered matched James Hill.

31. On or about November 17, 1980, L.J. was presented with a photo display of several persons including a photograph of James Hill. Although she had never identified anyone as the taller of the two attackers before being hypnotized, and although James Hill was not involved in the attack, L.J. identified a photograph of him as the taller of her two attackers.

32. On or about November 17, 1980, after L.J. had been hypnotized, police officers first took a detailed statement from L.J. concerning the facts of the attack on her.

33. In December 1980, L.J. viewed a lineup of five men at the Lake County Jail and identified James Hill, as the taller of her two attackers.

34. Defendants Michael Solan and Raymond Myszak assisted in preparing an Affidavit for Probable Cause, alleging as to James Hill acts of rape, deviate sexual conduct, robbery, and confinement against L.J.. Although these defendants knew that L.J. had been unable to identify Mr. Hill until after she was hypnotized, and that any hypnosis-induced identification was unreliable and therefore inadmissible in Indiana courts, and also knew that she had not given a detailed statement concerning the incident until after she was hypnotized, they omitted this material and exculpatory information from the probable cause affidavit and concealed this fact from the prosecutors and the judge.

35. As a direct and proximate result of Defendants' deliberate misrepresentations and material omissions, the Lake Superior Court found that probable cause existed, and issued a warrant for the arrest of James Hill.

36. During the investigation into the crime committed against L.J. members of the Hammond Police Department obtained false statements from Arthur Ezell in which he stated that James Hill had possessed a blue denim bag which was identical to the one which L.J. claimed the taller man had during the attack on her.

37. During the investigation into the crime committed against L.J., and prior to Hill's conviction and sentence becoming final, defendants Myszak and Solan obtained various exculpatory evidence which called into question the accuracy and reliability of Ezell's claim that Hill had possessed the blue denim bag.

38. Defendants Solan and Myszak were aware of this exculpatory information but suppressed it from the judge, jury, prosecutors and Hill in the criminal prosecution of Hill.

39. During the investigation into the crime committed against L.J., and prior to Hill's conviction and sentence becoming final, defendant Solan became aware of information that another person had admitted to the attack on L.J. and had stated that Hill was not involved, but Solan suppressed this information from the judge, jury, prosecutors and Hill in the criminal prosecution of Hill.

40. The hypnosis of L.J., and the fact that she identified James Hill only after being hypnotized, the evidence calling into question the accuracy and reliability of Ezell's claim that Hill had possessed the blue denim bag, and the evidence that another person had admitted that he had committed the attack on L.J. and that Hill was not involved, constituted material exculpatory and impeachment evidence. Defendants intentionally suppressed this critical evidence from the prosecutors, thereby preventing Mr. Hill from learning this information and presenting this powerful evidence in support of his defense.

41. In the event that the individual Defendants had revealed that L.J. had been hypnotized prior to her identifications of Hill, the identification of Hill would have been excluded from evidence at trial, or at the very least the credibility of L.J.'s identification of Hill would have been significantly impeached.

42. In the event that the individual defendants had revealed that L.J. had been hypnotized prior to her giving a detailed statement of the crime, the statement, and any evidence derived from it, would have been excluded from evidence at trial.

43. Hammond police officers, including, upon information and belief, some or all of the individual Defendants in this case, also procured false evidence from witness Bertha Allen, who testified falsely that Hill's codefendant, Larry Mayes, had introduced Hill to her. In fact, Hill and Mayes did not know each other.

44. Based on the hypnotically induced testimony of L.J., and the failure of the individual Defendants to reveal this hypnosis to the prosecutors, as well as the failure of the Defendants to reveal the exculpatory information which contradicted the testimony of Ezell, and the failure of the Defendants to produce the information that another person had admitted to the attack on L.J., James Hill was convicted and was eventually sentenced to 35 years in prison.

45. After Hill was convicted, the individual Defendants continued to conceal the fact that L.J. had been hypnotized, that there was evidence that Ezell's testimony that linked Hill to the blue bag was false, and that someone else had admitted to the crime, even though they knew that this information should have been tendered to the prosecution for disclosure to the defense.

46. Defendants Solan and Myszak, together with other Hammond police officers, including Robert Townsell, John Ratajczak and Dennis Williams who are now deceased, acting under color of law, conspired among themselves and with others, reached a mutual understanding and acted in concert to undertake a course of conduct that violated the constitutional rights of James Hill, by engaging in the actions set forth above, including hypnotizing L.J., causing L.J. to be hypnotized, failing to reveal to the judge, jury, prosecutors and defense counsel that L.J. had been hypnotized,

8

suppressing exculpatory evidence which indicated that Ezell's statement that Hill had a blue denim bag was false, and suppressing exculpatory information that another person had admitted to the attack on L.J.

47. In 2001, DNA testing on the physical evidence recovered from L.J.. revealed that neither Hill nor his co-defendant Mayes was the source of the semen deposited on L.J, and her clothing by the rapist.

## COUNT I

### (42 U.S.C. § 1983 14th Amendment - Denial of Fair Trial Claim)

48. Plaintiff realleges paragraphs 1 through 47 as though fully stated herein.

49. By concealing from prosecutors (and therefore from defense counsel) the fact that L.J. had been hypnotized prior to picking out a photograph of James Hill, and prior to picking him out at a line-up, the Defendants concealed material information which would have led the trial judge to exclude from evidence the purported identification of Hill by L.J. and dismiss the case.

50. By concealing from prosecutors (and therefore from defense counsel) the fact that L.J. had been hypnotized prior to picking out a photograph of James Hill, and prior to picking him out at a line-up, the Defendants concealed information which would have constituted powerful exculpatory evidence and/or impeachment of the purported identification of James Hill by L.J., and thereby denied him a fair trial.

51. By concealing from prosecutors (and therefore from defense counsel) the fact that L.J. had been hypnotized prior to giving a detailed statement about the crime, the Defendants concealed information which would have led the trial judge to exclude from evidence the detailed statement of L.J. and any evidence derived from that statement, including her testimony at trial.

52. By failing to disclose this information as to the hypnosis, the Defendants violated the Fourteenth Amendment, as interpreted by *Brady v. Maryland*, 373 U.S. 83 (1963), which imposed a clear duty on these investigating officials to report all material exculpatory and impeachment information to prosecutors.

53. Additionally, by failing to reveal to the judge, jury, prosecutors and defense counsel the exculpatory evidence which indicated that Ezell's statement that Hill had a blue denim bag was false, and the exculpatory information that another person had admitted to the attack on L.J., the Defendants violated the Fourteenth Amendment, as interpreted by *Brady v. Maryland*, 373 U.S. 83 (1963), which imposed a clear duty on these investigating officials to report all material exculpatory and impeachment information to prosecutors.

## COUNT II

### (42 U.S.C. § 1983 Supervisory Liability Claim)

54. Plaintiff realleges paragraphs 1 through 53 as though fully stated herein.

55. The unfair trial, and wrongful conviction of James Hill were caused by the deliberate indifference and reckless disregard for the constitutional rights of criminal defendants of Defendants Frank Dupey and Richard Tumildalsky of the Hammond Police Department, acting under color of law, when they failed adequately to train and supervise Hammond police officers Michael Solan, Robert Townsell, Dennis Williams, Raymond Myszak and John Ratajczak.

56. Specifically, these supervisory Defendants failed to train and/or supervise these employees and other defendants in constitutionally adequate law enforcement practices, particularly those which concerned hypnosis and production of exculpatory evidence, thereby encouraging and/or permitting these employees and other defendants to use unreliable techniques which were contrary to accepted methods used by law enforcement agencies, to fabricate false inculpatory evidence, and

to withhold exculpatory and impeachment evidence, which caused the constitutional deprivations suffered by James Hill.

57. The personal involvement of Defendants Dupey and Tumildalsky, through their actions and omissions, proximately and directly caused the constitutional deprivations and grievous personal injuries suffered by James Hil, including the above-mentioned injuries and damages.

## COUNT III

### (42 U.S.C. § 1983 *Monell* Claim Against the City of Hammond)

58. Plaintiff realleges paragraphs 1 through 57 as though fully stated herein.

59. The City of Hammond, by and through its policymakers, created and maintained a custom, policy or practice of deliberate indifference to the constitutional rights of citizens, by failing adequately to train and supervise and discipline its police officers, including the individual defendants in this case, to ensure that they:

- A. faithfully represented material facts when seeking arrest warrants;
- B. disclosed material exculpatory and impeachment information to prosecutors; and
- C. disclosed to prosecutors the fact that a witness had been hypnotized.

60. The City of Hammond's failure to train, discipline and supervise its police officers adequately in these constitutional duties directly and proximately caused James Hill to suffer constitutional deprivations, including his unfair trial, wrongful conviction, and the other grievous and permanent injuries and damages set forth above.

11

## DAMAGES

61. The actions of the Defendants deprived Plaintiff James Hill of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

62. The unlawful, intentional, wilful, deliberately indifferent, reckless and/or bad-faith acts and omissions of the Defendants caused James Hill to be falsely arrested and imprisoned, unfairly tried, wrongfully convicted, and to serve seventeen and a half years in jail and prison for a crime he did not commit.

63. The unlawful, intentional, wilful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of the Defendants caused James Hill the following injuries and damages: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled monetary relief.

64. All the acts and omissions committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

**WHEREFORE**, Plaintiff James Hill prays as follows:

A. That the Court award compensatory damages to him and against the Defendants, jointly and severally, in an amount to be determined at trial;

B. That the Court award punitive damages to him, and against all individual Defendants, in an amount to be determined at trial, that will deter such conduct by the Defendants in the future;

C. For a trial by jury;

D. For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

E. For any and all other relief to which he may be entitled.

October 4, 2010                                                        Respectfully submitted,

Mitchell A. Peters, #6560-45                              John L. Stainthorp
Richard A. Miller, 9359-45                                People's Law Office
MillerFisher Law LLC                                      1180 N. Milwaukee
8927 Broadway                                             Chicago, IL 60642
Merrillville, IN 46410                                    Telephone: 773/235-0070
Telephone: 219/769-0783

Robert P. Harper, #7479-64
Larry W. Rogers, #6184-64
Harper and Rogers
304 W. US Highway 6
Valparaiso, IN 46385
Telephone: 219/762-9538

Attorneys for Plaintiff James Hill

13