**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| JAMES HILL,  ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:10-CV-393-JTM-PRC |
| ) | |
| CITY OF HAMMOND, INDIANA, FRANK ) | |
| DUPEY, RICHARD TUMILDALSKY, ) | |
| RAYMOND MYSZAK, MICHAEL SOLAN, ) | |
|     Defendants. ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Stay Proceedings Pending Outcome of Criminal Charges [DE 54], filed by Plaintiff James Hill on July 11, 2012. Defendant City of Hammond ("the City") filed a response in opposition on August 13, 2012, and Plaintiff filed a reply on August 20, 2012. On August 20, August 21, and August 22, 2012, Defendants Michael Solan, Frank Dupey, and Raymond Myszak, respectively, each filed a Notice, indicating that he joins in the City's response.

On October 4, 2010, Hill filed this lawsuit, brought pursuant 42 U.S.C. § 1983, alleging that individual defendants Frank Dupey,[1] Richard Tumildalsky, Raymond Myszak, and Michael Solan violated his constitutional rights and that these violations caused him to be wrongly convicted in 1982 of the rape, robbery, and kidnaping of L.J. Specifically, Hill alleges in Count I the denial of the right to a fair trial under the Fourteenth Amendment to the United States Constitution, in Count II supervisory liability, and in Count III municipal liability against the City.

The following alleged facts are taken from the Complaint. The crimes against L.J. occurred on October 5, 1980. On November 14, 1980, Hammond police officer Larry Pucalik was murdered. On February 11, 1982, Hill was convicted of the offenses against L.J., and on February 25, 1982,

---

[1] Frank Dupey is now deceased.

he was sentenced to 35 years in prison. At the trial of Hill in 1982, the victim, L.J., identified Hill as the person who attacked and raped her and also identified a blue denim bag as being carried by Hill during the attack. The State presented a witness, Arthur Ezell, who was a student at the same high school as Hill, who claimed that he had seen Hill in possession of such a bag. The blue denim bag that was identified by L.J. and Ezell as being in the possession of Hill was recovered by police at the scene of the murder of officer Pucalik. On October 6, 2009, Hill's convictions were vacated pursuant to a Petition for Post Conviction Relief.

In late June 2012, Hill and two others–Larry Mayes and Pierre Catlett–were charged with the November 14, 1980 murder of Officer Pucalik. Hill and Mayes have pled not guilty to the charges. At the time the instant motion was filed, Catlett was still in the process of being extradited from Illinois, where he was in custody on an unrelated charge.

Hill believes that it is the State's position that the blue denim bag was carried by one of the persons who committed the Pucalik murder. It is Plaintiff's position in this civil case that, during the investigation into the crimes committed against L.J., and prior to Hill's conviction and sentence becoming final, Defendants Myszak and Solan obtained various exculpatory evidence that called into question the accuracy and reliability of Ezell's claim that Hill had possessed the blue denim bag but that they suppressed this information and failed to inform prosecutors, defense counsel, the judge, and the jury of it. Hill asserts that there is evidence suggesting that Ezell possessed the blue denim bag.

In the instant motion, Hill argues that the murder charges against him are inextricably linked to the allegations of the civil proceeding and that it would be unfair to him, would be potentially prejudicial to his defense of the murder charges, and would create the possibility of friction with the state criminal case to proceed with the civil case at this time. He reasons that, whether or not Hill

2

ever possessed the blue denim bag found at the scene of the Pucalik murder will thus likely be a central issue in the determination of the murder charges currently pending against him. He contends that, if it is established that he possessed the bag, then it appears that the State will use this evidence to attempt to prove that he was also at the scene of, and participated in, the crime that led to the murder of Officer Pucalik. In a footnote, Hill explains that, although at the time of filing the instant motion, the State had not yet presented its case against Hill in the murder case, Hill believes that it will be the State's position that Hill drove the getaway car in what was supposed to be an armed robbery of a Holiday Inn hotel and that, in the course of the robbery, Officer Pucalik was shot and killed by one of the men, Mayes or Catlett, who went into the hotel to commit the robbery.

Hill also notes that the probable cause affidavit filed in the Pucalik murder case alleges that the blue bag found at the murder scene was the same bag that was present during the L.J. crime. Hill reasons that it appears likely that the State will attempt to introduce evidence in the murder prosecution suggesting that the participants in the murder were also participants in other criminal activities at around the same time, including the crimes against L.J. Therefore, Hill argues that evidence that is not just relevant but central to the pending murder charges is also relevant and central to the proof in this case.

Written and oral discovery has been proceeding in this civil case since it was filed over two years ago. The City represents that, given the great amount of existing discovery and testimony from Hill's post-judgment conviction relief action, the other civil rights case that arose from the 1980 rape and robbery of L.J., and the two 1980 criminal trials, the parties have worked diligently and collegially to identify necessary discovery for this case and to craft helpful procedures for avoiding duplicative undertakings and unnecessary expense. At the time of the City's response brief, written discovery between the parties other than expert disclosures and future supplementation

had been completed, and the only remaining written discovery to be conducted was the issuance of certain non-party subpoenas for Hill's employment, school, and medical records that he identified in his answers to interrogatories. Hill, his wife, and his son, have already been deposed. The City's attorneys have otherwise identified which of Hill's witnesses they intend to depose.

The Court first considers the law relied upon by Hill in his opening motion. Although Hill does not cite *Younger v. Harris*, the cases he cites rely on or implicate the *Younger* abstention doctrine. Although the *Younger* abstention doctrine initially held that federal courts must abstain from enjoining ongoing state criminal proceedings, absent extraordinary circumstances, *Younger v. Harris*, 401 U.S. 37, 44 (1971), the doctrine has been expanded and now applies to federal claims for damages when the federal claims "are potentially subject to adjudication" in the state criminal proceeding. *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995) (explaining, for instance, that if the plaintiff were to obtain a favorable resolution of the federal damages action before the conclusion of the state proceedings, the "federal judgment might undermine the [state] court's consideration" of the defendant's constitutional defenses to his criminal conviction").

The problem with applying the *Younger* abstention doctrine is that the criminal charges and prosecution that form the basis of Hill's § 1983 civil rights claim are not currently pending in state court; those criminal charges were resolved long ago. Moreover, the constitutional claims raised in the instant case do not arise from the pending criminal charges brought against Hill in the murder of Officer Pucalik, which is the state criminal proceeding for which Hill would like this civil action stayed. Hill's civil rights claims arising from the alleged concealment of allegedly exculpatory evidence during his prosecution and conviction for the 1980 rape and robbery of L.J. will not be raised as constitutional defenses by Hill in the on-going prosecution for the murder of Officer Pucalik. In other words, a resolution of Hill's claims that his constitutional rights were violated

4

during the prosecution of the 1980 rape and robbery of L.J. do not have the potential to be adjudicated in the current state court prosecution of the murder of Officer Pucalik.

In his brief, Hill first cites *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* addressed the issue of *when* a civil rights plaintiff has standing to sue and held that a constitutional claim brought under § 1983 that "would undermine a criminal conviction if vindicated cannot be brought until the defendant's conviction is nullified." *Wallace v. City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006) (citing *Heck*, 512 U.S. 486-87). In this case, Hill seeks damages via this § 1983 suit for his convictions on the crimes against L.J., convictions which have been vacated by the State court. Thus, this instant § 1983 suit is not seeking damages arising from the ongoing state criminal proceedings currently being prosecuted.

In his brief, Hill cites the second half of a reference in a footnote in *Heck v. Humphrey* to the *Colorado River* abstention doctrine, which provides, in full: "For example, if a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings." *Heck v. Humphrey*, 512 U.S. 477, 487 n. 8 (1994) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). This basis for abstention is not applicable here because, again, the instant federal civil rights lawsuit challenging the constitutionality of the prosecution of Hill in the early 1980s for the rape and robbery of L.J. is not being brought during the pendency of Hill's criminal trial for the state-court proceedings on the rape and robbery of L.J., which as noted, occurred in 1982. The pending state-court charges against Hill for the murder of Officer Pucalik do not constitute "parallel state-court proceedings."

Hill accurately quotes the statement in *Wallace* that "[i]t will still be possible, of course, for a district court to stay any such action until the criminal proceedings are concluded, should it

5

conclude in its discretion that a stay would be useful." Pl. Br., p. 4 (citing *Wallace*, 440 F.3d at 427). However, Hill inaccurately describes this statement as applying generally when "civil rights litigation may impact on a pending criminal proceeding." Pl. Br., p. 4. Rather, *Wallace*, was concerned with the more narrow situation in which a § 1983 Fourth Amendment claim for false arrest or other similar Fourth Amendment violation accrues when the underlying criminal proceedings are ongoing. 440 F.3d at 427. Because the court in *Wallace* concluded that a § 1983 Fourth Amendment claim for false arrest or other similar Fourth Amendment violation accrues at the time of injury and not only when the criminal conviction has later been set aside, the court explained that the civil rights action should be filed at the time of arrest. This holding, in turn, led to the court's above-cited observation that such a federal civil rights case could be stayed, in the discretion of the district court, pending resolution of the underlying criminal case.

Hill also cites *Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir. 1995), describing the case as holding that, "in order to avoid 'friction' between civil rights litigation and a criminal case, it is proper for the district court to abstain from deciding the civil rights claims until the state courts have completed their determination of the criminal matter." Pl. Br., p. 4-5. However, as with *Wallace*, *Simpson* was concerned with a civil case seeking damages for civil rights violations arising out of a state criminal prosecution that was ongoing; in *Simpson*, an appeal of the defendant's conviction and death penalty sentence was currently pending in the Illinois Supreme Court. 73 F.3d at 138. It was under those conditions that the court stated that "the potential for federal-state friction is obvious." *Id*. This type of "friction" is not present in the instant case.

There is no concern that this civil rights litigation will affect the outcome of the criminal proceedings underlying the claims on which the civil rights litigation is based because, as noted, those criminal proceedings occurred in 1982. A judgment in favor of Hill in this civil proceeding

would go only to the validity of his 1982 convictions in the L.J. matter, which have already been vacated, and would not "'imply the invalidity of his conviction or sentence'" in the criminal proceedings for the Pucalik murder. *Wallace*, 440 F.3d at 425-26 (quoting *Heck v. Humprhey*, 512 U.S. at 487). In other words, it is not necessary to await the outcome of the Pucalik murder trial to determine whether Hill's civil rights were violated in the 1982 prosecution of the robbery and rape of L.J. Hill's attempt in his opening brief to expand the *Younger* abstention doctrine to include cases in which a piece of evidence (the blue denim bag in this case) at issue in a civil rights case that is brought related to an overturned prior conviction may also be at issue in a current, on-going criminal proceeding for a separate crime is unsupported by the case law cited by Hill. Although Hill paints the cited cases as standing for this proposition, they do not.

In his reply brief, Hill abandons his reliance on the cases cited in his opening brief and tries a new tactic, asserting that the Court should rely on its inherent authority to stay these proceedings "to allow the criminal proceeding to go forward without hindrance, allow Mr. Hill to prepare his defense in the murder charges without the distraction of this civil case, and permit the plaintiff to resume his civil litigation once the criminal case is resolved, in light of whatever that resolution is." Pl. Reply, p. 6 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance."). Notably, Hill does not rely on the Court's inherent authority in his opening brief as a basis for requesting the stay nor did he cite in his opening brief any of the extensive law presented on this new theory for the first time in the reply brief. Thus, this argument is waived. Nevertheless, even if the Court were to consider a request for a stay under its inherent authority,

7

having considered Hill's arguments, including the implication in both proceedings of the blue denim bag, the Court would decline to exercise its discretion to stay these civil proceedings under its inherent authority to do so.

Finally, the Court notes that the City spends much of its response brief arguing why a stay under the *Colorado River* abstention doctrine is not warranted. Because Hill does not seek a stay under *Colorado River* in his opening brief and because he in effect denies in his reply brief that his motion is based on that doctrine, the Court declines to analyze the instant motion thereunder.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion to Stay Proceedings Pending Outcome of Criminal Charges [DE 54].

The Court **ORDERS** Defendants to **FILE** a response, if any, to Plaintiff's Motion for a Protective Order to Bar Defendants From Taking the Deposition of Dennis Williams [DE 62] on or before **October 30, 2012**. Plaintiff may file a reply brief, if any, on or before **November 1, 2012, 2012**.

SO ORDERED this 25th day of October, 2012.

    s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record