## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| JAMES HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10 CV 393 |
| | ) | |
| RAYMOND MYSZAK; | ) | |
| MICHAEL SOLAN; and | ) | |
| CITY OF HAMMOND, INDIANA; | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

### I.    BACKGROUND

On October 5, 1980, a young woman, L.J., was working at a gas station in

Hammond, Indiana, when two men entered the store, displayed a gun, placed a blue

denim bag on the counter, and demanded money. After robbing the store, the two men

took L.J. to a car, and kidnapped and raped her. In the weeks that followed, the

Hammond Police Department investigated the crime, and L.J. identified Larry Mayes

and plaintiff James Hill as the perpetrators. L.J. testified that she thought the smaller of

her two assailants, Mayes, ejaculated during the rape. At trial, the blue bag was used to

connect plaintiff to the crime. He was convicted and sentenced to 35 years in prison.

Mayes was convicted in a separate trial. Plaintiff was released from prison in 1998.

In October 2001, L.J. revealed to prosecutors that she had been hypnotized

during the investigation by Detective Raymond Myszak. Further, in December 2001,

DNA analysis excluded both Mayes and plaintiff as perpetrators of the rape. Mayes was

released from prison when his post-conviction petition was granted on the basis of the DNA results.

In December 2005, plaintiff filed an amended petition for post-conviction relief seeking to have his conviction vacated based on the DNA results, the evidence of hypnosis, and the fact that documents (some related to the blue bag) were withheld from the defense at the time of trial. On October 6, 2009, the Lake County Superior Court (hereinafter "Post-Conviction Relief" or "PCR" court) granted plaintiff's petition, citing the failure of investigators to turn over documents (including those related to the blue bag) to the defense in advance of trial in violation *Brady v. Maryland,* 373 U.S. 83 (1963).

The PCR Findings of Fact and Conclusions of Law (DE # 135, hereinafter "PCR order") explained that, during plaintiff's criminal trial, the victim had described and identified a blue bag as the bag that plaintiff had ordered the victim to stuff with money from the register. (*Id.* at 14.) A prosecution witness named Arthur Ezell testified that petitioner made and carried the blue bag. (*Id.*) The PCR court held that the Hammond Police Department failed to turn over three documents, two of which could have called into question Ezell's claims regarding plaintiff's connections to the blue bag, and one – an interview with an individual named Robert Bailey – which could have been used to link Mayes in the crime to another person other than plaintiff. (*Id.* at 14.) These *Brady* violations constituted reversible error (*id.*), and formed the sole basis of the PCR court's

decision to grant plaintiff's post-conviction petition (*id.* at 16). The court added that "the suppression of these documents was inadvertent, not intentional." (*Id.* at 14.)

The PCR court declined to utilize the DNA results as a basis for vacating plaintiff's conviction. The court reasoned that, since there was no indication that plaintiff left seminal fluid during the attack, the fact that DNA testing excluded him was not persuasive. (*Id.* at 11.) The PCR court also declined to hold that the failure of the Hammond Police Department to turn over documents relating to L.J.'s hypnotism constituted a *Brady* violation. The PCR court held that any hypnosis session occurred between October 6 and 20, 1980, and that L.J. did not identify plaintiff until November 16 or 17, 1980. (*Id.* at 13.) The PCR court further held that no one in the Hammond Police Department knew of plaintiff or what he looked like until a month after the hypnosis session. (*Id.*) Given these facts, the PCR court concluded that it would have been impossible for the hypnosis session to have suggested the identification of plaintiff to L.J. Therefore, the issue of L.J.'s hypnosis was not exculpatory or material to an issue at trial, and it did not constitute a *Brady* violation for the Hammond Police Department to withhold documents related to the hypnosis. (*Id.* at 13.)

Despite the fact that the PCR court's order vacated his conviction, plaintiff appealed the PCR order because it contained statements plaintiff argued were adverse to his interests. (DE # 135 at 25.) Plaintiff asked, for purposes of pursuing civil litigation, that any of the PCR court's rulings other than the findings related to the existence of *Brady* violations be declared dicta, including any statements related to the unintentional

nature of officers' actions in failing to turn over documents, and statements regarding

whether the Hammond Police Department's failure to turn over documents related to

the hypnosis session constituted a *Brady* violation. (*Id*. at 27.) The State of Indiana

opposed the appeal, but made the same arguments as plaintiff that any statements of

the PCR court other than the specific findings of affirmative *Brady* violations constituted

dicta, thus rendering the appeal meritless as plaintiff had experienced no adverse

rulings. (*Id.* at 20.) According to the State, the "single [*Brady*] violation required a new

trial and rendered all other findings superfluous." (*Id.*) Neither plaintiff nor the State

cited any precedent indicating that their definition of dicta was correct. The Court of

Appeals issued a one-page order dismissing plaintiff's appeal in May 2010, with no

discussion or hearing. (*Id.* at 30.)

On October 4, 2010, plaintiff filed the present lawsuit against a number of

defendants. After six years of litigation, only three still remain in this case: the City of

Hammond, Detective Myszak, and Detective Solan (a supervising detective). Only two

of the counts in plaintiff's complaint still stand: Count I, a claim under 42 U.S.C. § 1983

for violation of plaintiff's Fourteenth Amendment right to a fair trial; and Count III, a

Section 1983 claim under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), in

which plaintiff alleges that the City created and maintained a custom, policy, or practice

of deliberate indifference in the form of failure to adequately train, supervise, and

discipline its officers. Several motions are before the court for resolution.

## II.     THE CITY'S MOTION TO DISMISS

The City, joined by Myszak and Solan, move to dismiss plaintiff's complaint under the doctrine of issue preclusion. (DE ## 119, 121, 147 at 12.) Specifically, the City claims that plaintiff cannot relitigate, in this case, those matters which were addressed by the PCR court in its October 6, 2009, order. As explained above, the PCR court vacated plaintiff's conviction due to several *Brady* violations by the Hammond Police Department, but held that "the suppression of these documents was inadvertent, not intentional." (DE # 135 at 14.) The PCR court also declined to find a *Brady* violation in the failure of the Hammond Police Department to turn over hypnosis-related documents. Despite these prior holdings, plaintiff alleges in Count I that defendants failed to turn over documents related to the hypnosis session (DE # 1 ¶¶ 49-52) and the blue bag (*id.* ¶ 53), and in Count III plaintiff alleges failure to turn over exculpatory documents generally and hypnosis documents specifically (*id*. ¶ 59(B) & (C)). The City, plus the joining defendants, claim that these counts cannot stand because they are based upon fully litigated issues resolved by the PCR court.

It is well-settled that federal courts must afford full faith and credit to both criminal and civil state court decisions. 28 U.S.C. § 1738. The preclusive effect of state court judgments in Section 1983 actions is governed by the law of the state from which the judgment issued (in this case, Indiana). *See Allen v. McCurry,* 449 U.S. 90, 96 (1980); *Wabash Valley Power Ass'n v. Rural Electrification Admin.,* 988 F.2d 1480, 1487 (7th Cir. 1993). Under Indiana law, a prior judgment is given preclusive effect in a subsequent

5

proceeding brought by the party against whom the prior judgment was entered when four conditions are satisfied: (1) a final judgment exists from a court of competent jurisdiction; (2) the issue was actually litigated; (3) the party against whom estoppel is being asserted had a full and fair opportunity to litigate the issue in question; and (4) it is not otherwise unfair to preclude relitigation. *See Infectious Disease of Indianapolis, P.S.C. v. Toney,* 813 N.E.2d 1223, 1228 (Ind. Ct. App. 2004); *Sims v. Scopelitis,* 797 N.E.2d 348, 351 (Ind. Ct. App. 2003); *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind. Ct. App. 2000). Findings in criminal matters can have preclusive effect in later, civil matters so long as the burden of proof is not so different between the proceedings as to render the preclusive effect unfair. *See Nolan v. City of Indianapolis,* 933 N.E.2d 894, 898 (Ind. Ct. App. 2010).

The City's arguments regarding the PCR court's hypnosis findings have merit. By virtue of Indiana's own rules regarding post-conviction procedures, orders of PCR courts are final judgments, satisfying the first prong of the issue preclusion analysis. Ind. R. of Post-Conviction Remedies § 6 ("The court shall make specific findings of fact, and conclusions of law on all issues presented. . . . This order is a final judgment."). Plaintiff claims that the issue was not actually litigated, as required by the second element of the issue preclusion test, because the standard for finding a *Brady* violation at the post-conviction phase is different than it would be in civil litigation. Specifically, the latter requires a showing of deliberate withholding on the part of officers, whereas the former requires only a showing of a lack of disclosure regardless of intent.

6

However, the fact that a civil proceeding imposes an additional element of proof on plaintiff does not render the issue of the lack of disclosure "not actually litigated." That particular issue was indeed litigated, it appears vigorously, a fact which plaintiff cannot dispute.

Plaintiff also takes issue with the third prong of the analysis, claiming that, because his appeal of the PCR proceeding was dismissed in a one-page order without a hearing, he was not afforded a "full and fair opportunity to litigate" the issues. But no Indiana rule or precedent requires that plaintiff be afforded a hearing on appeal or a full written explanation for the dismissal of his appeal. *See* Ind. R. App. P. 52(A) (oral argument held at appeals court's discretion) & 65 (explaining opinions and memorandum decisions). Plaintiff also argues that the Indiana Court of Appeals effectively adopted the arguments made by himself and the State of Indiana that any statements other than the narrow finding of the existence of a few *Brady* violations constituted dicta with no preclusive effect. However, the Indiana Court of Appeals' silence in the face of such arguments cannot be construed as a tacit approval of them; such a holding would go against well-established Indiana precedent that a "judgment, until annulled or reversed, stands binding upon the parties, as to every question directly decided." *State ex rel. Braden v. Krug,* 94 Ind. 366, 371 (1884). In other words, because the Indiana Court of Appeals said nothing, the PCR court's ruling stands as binding.

Finally, plaintiff complains that it is simply unfair to preclude relitigation of whether the failure to turn over documents related to the hypnosis constituted a *Brady* violation, because applying issue preclusion would "effectively bar Hill from ever having the opportunity to actually litigate these issues." (DE # 135 at 7.) However, plaintiff overlooks the fact that he *did* have an opportunity to actually litigate this issue, and he was unsuccessful in convincing the PCR court that a *Brady* violation occurred with regard to the hypnosis documents. Without some more compelling justification, the court cannot overlook a final judgment of a state court simply because plaintiff states that doing so is unfair to him. Accordingly, issue preclusion applies in this case with regard to the question of whether the Hammond Police Department's failure to disclose documents related to the hypnosis of L.J. constituted a *Brady* violation; this requires dismissal of Counts I and III of plaintiff's complaint, insofar as they contain allegations related to the hypnosis documents. Further, because plaintiff's allegations against Myszak appear to relate solely to the use of hypnosis and failure to turn over documents related to the hypnosis, all potential claims against Myszak have been dismissed. His motion for summary judgment is therefore denied as moot. (DE # 132.)

However, plaintiff's claims related to the Hammond Police Department's failure to turn over other exculpatory documents, including those related to the blue bag, survive defendants' motion to dismiss. The PCR court held that the failure to turn over these documents constituted a *Brady* violation, but it also stated that the suppression was "inadvertent, not intentional." (DE # 135 at 14.) However, under Indiana law, "[a]

former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. . . . In order for a matter to have been 'necessarily adjudicated' such that issue preclusion applies, the determination must have been essential to the decision." *Musgrave v. Squaw Creek Coal Co.,* 964 N.E.2d 891, 898 (Ind. Ct. App. 2012).

As mentioned briefly above, under *Brady*, suppression of evidence favorable to the accused violates due process in criminal proceedings, "irrespective of the good faith or bad faith" of the officers. *Bunch v. State,* 964 N.E.2d 274, 297 (Ind. Ct. App. 2012). Accordingly, whether officers in this case acted intentionally or not in withholding other documents, including those related to the blue bag, was not an issue that was before the PCR court, and any commentary by the PCR court related to the officers' intentions was dicta. *In re Adoption of L.T.,* 9 N.E.3d 172, 179 (Ind. Ct. App. 2014) ("A statement unnecessary in the determination of the issues presented . . . is obiter dictum, not binding, and not law."). Thus, to the extent necessary to resolve Counts I and III of this civil case, plaintiff may litigate the issue of officers' intentions as related to their failure to turn over documents that the PCR court found were suppressed in violation of *Brady*, including those related to the blue bag. For these reasons, the City's motion to dismiss is granted in part, and denied in part.

### III. MOTIONS FOR SUMMARY JUDGMENT

#### A. Legal Standard

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all

legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).

### B.     The City's Motions to Strike

The City filed three separate, but somewhat repetitive motions to strike. The first motion is an amalgamation of all of the City's complaints about plaintiff's Statement of Facts and Statement of Genuine Disputes. (DE # 142.) In the second, the City complains about the way plaintiff characterizes facts in his response brief. (DE # 148.) The City then filed a largely superfluous third motion, in which the City admitted that it was effectively repeating its first motion, only this time adding specific citations to plaintiff's Statement of Facts. (DE # 157.) Plaintiff then had no choice but to respond to each motion separately, as well as each motion filed by the other defendants seeking to join in the City's motions.

To begin, the court notes that the complaints contained in the City's second motion should have been incorporated into the City's reply brief as argument, as the objections are largely to plaintiff's choice of words or characterization of the evidence, not to the actual admissibility of the evidence itself. *See* Fed. R. Civ. P. 56(c)(2). A line-by-line discussion of this motion, and the alleged mischaracterizations of fact referenced therein, is unnecessary. It is the function of a court, with or without a motion to strike, to review carefully all of the briefing related to a motion for summary judgment and to eliminate from consideration any argument, conclusion, or assertion unsupported by the documented evidence in the record. *Mayes v. City of Hammond, Ind.,* 442 F. Supp. 2d

587, 596 (N.D. Ind. 2006). The court is fully able to recognize the difference between an attorney's statements in a brief and evidence as it actually exists in the record, and assures counsel for both sides that the underlying motion for summary judgment was decided through an examination of the evidence, regardless of how that evidence was characterized by the attorneys in this case.

As for the first and third motions to strike, some of the City's complaints are valid. For example, plaintiff's 58-page "Statement of Facts" is problematic. It was filed as "Exhibit B" to plaintiff's response brief, but it is not a supporting exhibit at all. Rather, it is plaintiff's fact recitation, which is a necessary element of any party's response brief. However, as perhaps plaintiff was aware, the page limit for briefs in this district is 25 pages, L.R. 7(e), and plaintiff's lengthy fact recitation would have put plaintiff's filing well over this limit. Rather than seek leave to file a longer brief, plaintiff filed a 25-page response brief, with a two-sentence fact section that refers the reader to the 58-page "exhibit" entitled "Statement of Facts." This practice violates this district's Local Rules on page limits for response briefs, and as such plaintiff's Statement of Facts will be stricken and the court will not consider it. Thus, to the extent that any of the City's motions to strike object to the contents of plaintiff's Statement of Facts (DE # 134-1 at 1-60), the motions are granted to that extent.

While L.R. 56-1 permits a summary judgment brief's appendix to include a Statement of Genuine Disputes (like the one plaintiff submitted as "Exhibit B" to his response brief), plaintiff's filing contains not even a single citation to the record or any

piece of evidence, in violation of Fed. R. Civ. P. 56(c)(1)(A). Accordingly, the City's

motions are also granted as to plaintiff's Statement of Genuine Disputes (DE # 134-1 at

62-69); this filing is stricken and the court will not consider it. However, to the extent

that plaintiff's response brief contains citations to admissible evidence, the court will

consider that evidence in determining whether a genuine issue of material fact exists in

this case.

The City also renews its contention that the PCR court's October 6, 2009, decision

granting plaintiff's post-conviction petition bars plaintiff from basing his claim on any

failure to turn over documents related to the hypnosis of L.J. and/or the alleged non-

disclosure of other exculpatory documents, including those related to the blue bag. As

explained in detail in the court's ruling on the City's motion to dismiss, *supra*, plaintiff's

claims alleging *Brady* violations related to hypnosis materials have been dismissed and

the court will disregard any evidence in the record containing evidence probative of the

hypnosis-related claims alone. However, the court will not disregard evidence

probative of the alleged *Brady* violations related to other exculpatory documents,

including those related to the blue bag.

The City objects to plaintiff's use of several individuals as experts in the briefing

of this matter. However, the court need not consult the opinions of these individuals to

decide the present motion, so the City's motions to strike are denied as moot with

regard to the use of these experts.

Finally, the court notes that to the extent that designated evidence by either party is inadmissible in this case, the court disregards that evidence in evaluating the motions for summary judgment. *Gilfand v. Planey,* No. 07 C 2566, 2011 WL 4036110, at *5 (N.D. Ill. Sept. 9, 2011) ("[the court] can determine the facts relevant to summary judgment and disregard extraneous or improper statements").

### C.    The City's Motion for Summary Judgment

The City has moved for summary judgment (DE # 122) on Count III of plaintiff's complaint, a Section 1983 claim under *Monell,* 436 U.S. 658, in which plaintiff alleges that the City created and maintained a custom, policy, or practice of deliberate indifference in the form of failure to adequately train, supervise, and discipline its officers. (DE # 1 at 11.)

*Monell* holds that a municipality can be liable under Section 1983 if action pursuant to an official policy or custom of the municipality causes a constitutional tort. 436 U.S. at 690-91. Further, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983." *Id.* at 694. An unconstitutional custom or policy can be in the form of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law. *Valentine v. City of Chicago,* 452 F.3d 670, 684 (7th Cir. 2006). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate

14

indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). As the *City of Canton* Court articulated: "It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. There must also be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385, 390. Causation is established when the municipal policy in question is a "moving force" behind the constitutional injury inflicted in a particular case. *Monell,* 436 U.S. at 694.

After a thorough review of the parties' arguments and the record, the court concludes that the evidence, viewed in a light most favorable to plaintiff, reveals genuine issues of material fact, including but not limited to the questions of whether the City's police department lacked policies, protocols, and training for detectives concerning basic investigative tasks, such as documenting and disclosing exculpatory and impeachment evidence, and whether the City's police department's practices or customs were a moving force behind plaintiff's alleged constitutional deprivations. Accordingly, this claim must be submitted to a fact-finder, and the City's motion for summary judgment is denied.

## D. Solan's Motion for Summary Judgment

Plaintiff asserts one claim against Solan: a claim under Section 1983 for violation of his Fourteenth Amendment right to a fair trial (Count I). (DE # 1 at 9.) Specifically, plaintiff claims that Solan violated *Brady* and interfered with plaintiff's right to a fair criminal trial. (*Id.* at 9-10.) Under *Brady*, if Solan "deliberately withheld information, seeking to misdirect or mislead the prosecutors and the defense, then there is a genuine constitutional problem." *Newsome v. McCabe,* 260 F.3d 824, 825 (7th Cir. 2001). Solan has moved for summary judgment on this claim. (DE # 116.)

After a thorough review of the parties' arguments and the record, the court concludes that the evidence, viewed in a light most favorable to plaintiff, reveals genuine issues of material fact, including but not limited to the question of whether Solan deliberately failed to disclose information, such as the interview with Robert Bailey, to prosecutors (and therefore to the defense). It is up to a fact-finder to assess Solan's credibility and determine whether he did or did not deliberately withhold or suppress information.

For this reason, Solan's request for qualified immunity must also be denied at this time. In this case, the issue of qualified immunity hinges on whether, taken in a light most favorable to plaintiff, the facts show that Solan's conduct violated a constitutional right. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). A genuine issue of material fact exists regarding whether a constitutional violation occurred, so the court cannot grant qualified

immunity at the summary judgment phase, and a fact-finder must decide the issue. *DuFour-Dowell v. Cogger,* 152 F.3d 678, 680 (7th Cir. 1998) ("Because the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity . . . a fact finder must decide if DuFour can prove that Morgan and Cogger acted in this fashion.").

IV.   **CONCLUSION**

In summary:

- The City's Motion to Dismiss (DE # 119) is **GRANTED in part, and DENIED in part**;

- Myszak's Motion for Summary Judgment (DE # 118) is **DENIED as moot**;

- The City's First, Second, and Third Motions to Strike (DE ## 142, 148, 157) are **GRANTED in part, and DENIED in part**;

- The City's Motion to Supplement (DE # 144) is **DENIED as moot**;

- The City's Motion for Summary Judgment (DE # 122) is **DENIED**; and

- Solan's Motion for Summary Judgment (DE # 116) is **DENIED**.

All that remains in this case is trial on Count I against Solan, and Count III against the City, with the issues limited as described in this order. A trial date will be set under separate order.

**SO ORDERED.**

Date: March 30, 2016

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT