UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES HILL,      Plaintiff, | )<br>)<br>) |
| v. | )   No.   2:10-CV-393<br>) |
| MICHAEL SOLAN; and<br>CITY OF HAMMOND, INDIANA      Defendants. | )<br>)<br>)<br>) |

**DEFENDANT MICHAEL SOLAN'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS RULE 50 MOTION FOR A DIRECTED VERDICT/
MOTION FOR JUDGMENT AS A MATTER OF LAW
REGARDING PUNITIVE DAMAGES**

Comes now Defendant, Michael Solan, by Counsel, Levinson & Levinson, and renews his Rule 50 Motion for a Directed Verdict, Motion for Judgment Notwithstanding the Verdict/Motion for Judgment as a Matter of Law and, in the alternative, Request for a Remittitur. Defendant Solan incorporates, by reference, all supporting arguments contained in his Brief in Support of Directed Verdict, Defendant City of Hammond's Motion and Brief in Support of Directed Verdict, Defendant City of Hammond's Notice of Citation to Additional Authority [DE 352] and arguments made in support of a Directed Verdict. To address the jury's award of punitive damages, Defendant Solan further states as follows.

   I.   **The evidence does not support the jury finding that Solan acted with reckless or callous indifference to Hill's federally protected Brady rights or that he acted with evil intent.**

Defendants' Directed Verdict Motions, as set forth in their respective Briefs and Arguments, demonstrate that the Plaintiff failed to present evidence necessary to prove an actionable *Brady* violation. In addition, the record contains no evidence to support a verdict for punitive damages against Defendant, Michael Solan. To award punitive damages, there must be

1

evidence that Defendant Solan acted with reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 56 (1983). In *Kolstad v. American Dental Association,* 527 U.S. 526, 534 (1999), the Supreme Court refined the standard for punitive damages. Although that case involved Title VII, it relied wholly on Section 1983 law regarding punitive damages. The Court explained that there is a distinction between a defendant's "intent to do an act" and her intent "to effect a civil rights violation" as a consequence of the act; liability under Section 1983 punitive damages is available only where the evidence creates an inference that the defendant was aware of the risk that the intentional acts would violate federal law. See also *Iacobucci v. Coulter*, 193 F.3d 14, 25-27 (1st Cir. 1999)(evidence was insufficient to support a jury award of punitive damages because it simply shows an exasperated police officer who made an objectively unreasonable mistake, rather than evidence that the defendant deliberately acted in the face of a perceived risk that his actions would violate federal law). Further, the Seventh Circuit has recognized that evidence of evil motive is normally required to warrant a punitive damage award. *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999)(plaintiff was denied punitive damages from the police officers because the lower court found that there was "not a scintilla of evidence suggesting evil motive on the part of the police [officers]").

There is no evidence to support a finding that Michael Solan acted recklessly or with callous indifference to Hill's rights; nor is there evidence that his conduct manifested evil motive. First, exculpatory evidence (e.g., inconclusive fingerprint analysis, criminal records of inculpatory witnesses and the report that Jaynes initially described her assailant as taller than the man she identified) was provided prior to Hill's trial. That alone undermines the notion of a sinister scheme on the part of Defendant Solan to convict Hill at any cost. Further, it was the

detectives who personally investigated the case and drafted the respective reports (hereinafter referred to as the "*Ezell Document*" and the "*Deneal Document*"), not Defendant Solan, who were tasked with giving the prosecutor evidence they knew to be *Brady* material. Defendant Solan in no way prevented those detectives from submitting the reports to the prosecutor and there is no evidence from which to conclude any such action.  Defendant Solan himself personally revealed contents of the *Ezell document* in his deposition, demonstrating he had no evil intent to conceal the entire report.  Finally, there is no evidence that undermines the conclusion that Defendant Solan reasonably believed that the inadmissible *Deneal document*, consisting of a triple hearsay statement, was not exculpatory because the credible victim identified her assailant as Hill, a man that bore no resemblance to Deneal. Defendant Solan could not have intended to deprive Hill of his rights when he had no reason to believe those documents would affect the outcome of the trial.

   A. *Ezell Document* –

No reasonable jury could conclude that Solan sought to deprive Plaintiff of his constitutional rights by not turning over the inculpatory or exculpatory evidence contained in the *Ezell document*. First, Defendant Solan actually divulged the contents of the *Ezell document* to the prosecutor and the defense attorney at his pre-trial deposition on January 25, 1982.  The prosecuting attorney (hereinafter "Vanes"), agreed that what Defendant Solan did was the opposite of suppressing the information contained in the document. Day 2; p. 131.  Vanes testified that he was not given the *Ezell document* prior to trial 40 years ago, but he also agreed that he did not have the benefit of an inventory dating back to that time – which would have been better than relying on memory.  Day 2; p. 69, 134-135.  Vanes, too, did not recall Defendant Solan testifying on January 25, 1982 about the contents of the document but, after reading the

3

January 25, 1982 testimony in open Court, Vanes agreed that Solan revealed contents of the *Ezell document* prior to trial and that he and his co-prosecutor, John Burke, knew the contents of the document prior to trial, as evidenced by them "fronting" the information during Ezell's testimony.  Day 2; pp. 70, 114, 116 & 131.

If the *Ezell document* itself was not received prior to trial, there is no question that the defense could reasonably have asked, on January 25, 1982, whether a report was generated after hearing Defendant Solan testify about the conversation Ezell had with the police.  *Boss v. Pierce*, 263 F.3d 734 (7th Cir. 2001)(defense counsel is expected to ask witnesses the appropriate questions relevant to the witness' role in the case). Had either the prosecutor or the defense attorney done so, they most certainly would have received the report itself.  The PCR court agreed with this assessment when it deemed the failure to turn the information over as "inadvertent, not intentional." [DE 126-8, par 17-18 and "Judgment"].  This evidence forecloses a finding that Solan acted with evil intent to conceal the *Ezell document*.

B. **Deneal Document**  –

The *Deneal document* was drafted by Mak and McPhillips, the detectives who took the rape victim (hereinafter "Jaynes") through photo arrays, including the one where she identified Hill.  Mak and McPhillips also took Jaynes through the in-person lineup where she identified Hill, they took her Q & A about the incident, and they submitted the file to the prosecution that resulted in the charges against Hill.  As attested to by Vanes, Mak and McPhillips were among the many detectives that he met with to prepare for the criminal trial.  Mak and McPhillips directed the *Deneal document* to Williams and Myszak, two other detectives who worked with Vanes leading up to the criminal trial.  The detectives that investigated the Jaynes case were responsible for bringing relevant information to the prosecution.  There is no evidence from

which a reasonable jury could conclude that Defendant Solan instructed those four detectives to suppress that information.

A day or so after the report was generated, Defendant Solan read the report. Despite the *Deneal document's* third-party reference to Deneal and Mayes raping and kidnapping a girl at a gas station, the photograph of Deneal that Mak and McPhillips attached to the report looked nothing like Hill, the man Jaynes identified as the perpetrator. Defendant Solan located Deneal to talk to him because of "case number 2" (which refers to one of the three other cases in which Hill was implicated and identified by victims, but about which the jury was not informed[1]); not because of the Jaynes' case. Day 2; p. 24. Defendant Solan believed the *Deneal document* was not exculpatory of Hill based on the utter lack of resemblance to the man Jaynes identified. Day 2; p. 24. The report, coupled with the photo attached, conclusively established that Deneal did not rape Jaynes.

Vanes testified that he believed the *Deneal document* was exculpatory because it suggested that someone other than Hill kidnapped and raped a woman at a gas station with Mayes. Vanes believed, again without the benefit of an inventory since one was not done in 1982 by the prosecutor's office, that he would have remembered if he saw the *Deneal document* at any time before Hill's 2005 PCR hearing because Deneal and Mayes were so much closer in age than Mayes and Hill and he found the age disparity a potential weakness in the case. Day 2; p. 77. When Vanes testified that the *Deneal document* was exculpatory, however, he had not seen the photograph of Deneal that was attached thereto. Day 2; p. 126. When Attorney Jensen

---

[1] An offer of proof was made whereby Vanes testified outside the jury that the two victims of another robbery identified Hill as the perpetrator but those witnesses were not brought to the 1982 trial because Vanes did not believe the court would have allowed it under Rule 404. Vanes further testified that, after Hill was convicted of the rape, they dismissed the KFC case because it wouldn't have gotten him additional time. Day 2; pp. 79-91.

5

showed Vanes the photograph of Deneal on cross examination, Vanes agreed that he did not look at all like Hill in 1982, appearing much older, with different eyes and a prominent moustache.

Vanes worked with Jaynes prior to putting her on the witness stand and believed she had solid identifications of the two men who raped her, having stood across the counter from them in a well-lit area and then within close quarters of their faces while she was raped. Day 2; p. 121. Vanes noted Jaynes' powers of observation, her credibility and her believability, as exemplified by her identification of the license plate number of the car where her belongings were found. He remembers nothing that suggested she lacked credibility or believability. Day 2; pp. 106, 107, 120-122. Vanes knew that Jaynes identified Hill out of all the photo arrays, the lineup and again in the courtroom. Day 2; p. 107-109. Throughout the case, Jaynes never expressed any hesitancy or uncertainty with regard to the identity of Hill as one of her assailants. Day 2; p. 109. Like Vanes, Defendant Solan knew the two men looked nothing alike and, believing Jaynes' credible identification, reasonably concluded that Deneal was not implicated in this crime. Hill, himself, testified that he knew Deneal from prison and they looked nothing alike. Defendant Solan's legitimate belief that the *Deneal document* would not exculpate Hill undermines the finding that he suppressed it to cruelly and intentionally deprive Hill of a fair trial.

Notably, Detective Solan had no reason to believe that he was not entrusted with eliminating Deneal as a possible suspect. When Hill claimed another individual, Charles Johnson, was responsible for the Jaynes rape, Vanes called upon Detective Solan to determine whether he was, in fact, the perpetrator. Day 2; pp. 122 & 155.

In sum, there is no evidence to support a finding that Defendant Solan acted with reckless or callous indifference to Hill's civil rights. The detectives handling the investigation were responsible for sharing relevant evidence with the prosecutor. At least four of the detectives had

the documents in question, Defendant Solan, as a supervisor, was never the individual who delivered discovery to the prosecution, and he certainly never instructed the investigating detectives to suppress a document he did not even believe exculpated Hill based on his own reasonable assessment that Deneal looked nothing like the person Jaynes identified. A punitive damage award is therefore not supported by the evidence.

II. **An award of punitive damages is unreasonable where Solan's conduct in 1982 did not violate clearly established law regarding the Brady doctrine in the first place.**

The jury award of punitive damages does not affect Solan's entitlement to qualified immunity. As described in Defendants' Motions and Briefs in Support of a Directed Verdict, qualified immunity is to be decided by the Court. The jury, therefore, was not informed that there was no clearly established law in 1982 that prosecutors (let alone law enforcement officers) were required to turn over evidence readily available to the defense, especially when the material was already disclosed directly to the defense by law enforcement as was the contents of the *Ezell document. U.S. v. Tadros,* 310 F.3d 999, 1005 (7th Cir. 2002)(*Brady* does not require an officer to give readily available material to the defense). Likewise, the jury was not informed that the law was not clearly established in 1982 that prosecutors (let alone law enforcement officers) had an obligation to turn over inadmissible evidence such as the *Deneal document*. To the contrary, the law pointed in the opposite direction. *Beaman v. Freesmeyer,* 776 F3d 500, 509-510 (7th Cir. 2015). Although the *Beaman* court did believe that the *Brady* obligation extended to law enforcement, it nonetheless found that the officers were entitled to qualified immunity because it was not clearly established in 1995 that officers need to turn over inadmissible polygraph reports or any other type of inadmissible evidence.

7

There is no question that the *Deneal document* was inadmissible, unreliable hearsay. It described Bailey, a career criminal who, while in jail, told the police that a third-party (Deneal) told him he committed a series of robberies with Mayes and they kidnapped and raped a woman at a gas station. As described above, Jaynes credibly identified someone that looked nothing like Deneal – as even Hill acknowledged - so it did not exculpate Hill but, in addition to that, Detective Solan is entitled to qualified immunity because the document itself was inadmissible and therefore not *Brady* material in 1982[2].

As argued in Defendant's Directed Verdict, qualified immunity requires that the alleged civil rights violation be defined in a particularized context in order to impose liability. This includes the award of punitive damages. As stated in *Beaman,* "even if it was clearly established that evidence inculpating another suspect was *Brady* material, the relevant question is whether inadmissible evidence inculpating another suspect is *Brady* material, and, therefore, defendants are entitled to qualified immunity". *Id.*

The jury's apparent determination that Defendant Solan acted with callous and reckless indifference to Hill's federal constitutional rights does not govern the qualified immunity question, which is for this Court to decide. Because the evidence does not legally support the jury's assessment of Defendant Solan's duties to Hill, qualified immunity should shield Defendant Solan from any individual liability, including punitive damages.

---

[2] Perhaps to overcome the fact that the *Deneal document* was obviously inadmissible hearsay, Hill's counsel argued that he was foreclosed from investigating the *Deneal document* prior to his trial. Hill himself testified that Deneal looked nothing like him and Hill has had this document since at least the 2005 PCR hearing and still alleges no further connection between Deneal and the Jaynes case.

### III.     Even if an award of punitive damages was supported by the evidence, $500,000 is grossly excessive to punish or deter.

The Supreme Court ruled that punitive damages are improper if they are excessive in relation to the need to deter or punish, and it imposed substantive due process limits on the size of punitive damage awards. *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21-24 (1991)(unlimited jury or judicial discretion in fixing punitive damages could "cross the line into the area of constitutional impropriety"). See also *Rakovich v. Wade,* 819 F.2d 1393 (1400)(7th Cir. 1987)(although retaliatory motivation was sufficient to support award of punitive damages $90,000 exceeded what was necessary to effectuate deterrence). In *Cooper Industries v. Leatherman Tool Group, Inc.* 6532, U.S. 424 (2001), the Court cautioned that "the jury's award of punitive damages does not constitute a finding of fact." Thus, it does not implicate the 7th amendment and appellate courts, in fact, are advised to apply de novo review.

The guideposts in determining the reasonableness of punitive damages awards are:  1) the degree of reprehensibility, 2) the disparity between compensatory and punitive damage award and the actual harm to Plaintiff that could not be covered without punitive damages, and 3) the comparison with civil and criminal penalties that could be imposed for comparable misconduct. *BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996); *Kunz v. DeFelice,* 538 F.3d 667 (7th Cir. 2008).

**1. Degree of Reprehensibility:**

The first and most applicable prong of this assessment is the degree of reprehensibility of Defendant Solan's alleged misconduct.  Despite the jury award which, it is contended, was more affected by passion than the facts of the case, the word "reprehensible" can hardly be used to describe Solan's alleged conduct.  The egregious conduct Plaintiff alleged with regard to

9

Defendant Solan was that he intentionally suppressed the two documents in question to deprive Hill of a fair trial. The evidence does not support this malicious intent.

Defendant Solan personally divulged information contained in the *Ezell document* prior to trial, demonstrating his lack of intent to conceal or suppress the information. He had no reason to believe the report had not been turned over by his detectives, as was the practice in the office. Likewise, regarding the *Deneal document*, malicious intent cannot be reasonably deduced. Defendant Solan was very familiar with Hill's appearance and he knew that Jaynes was very certain about her identification of Hill. He discovered that Deneal looked nothing like Hill and, therefore, reasonably concluded that the *Deneal document* was of no exculpatory value to Hill. Vanes and Hill agreed that Deneal and Hill looked nothing alike and a comparison of the two pictures confirms those observations. To conclude that Defendant Solan intentionally suppressed the *Deneal document* in order to deprive Hill of a fair trial is contrary to common sense. The non-exculpatory nature of the *document* undermines the argument that Defendant Solan acted maliciously or intentionally.

Defendant Solan's belief that Deneal was not the actual perpetrator of the crime -- notably, a decision entrusted upon him by Vanes when Hill identified another man (Charles Johnson) as the actual perpetrator of the crime[3] -- did not cause him to decide not to turn the report over. As was the policy in the department, Solan relied upon his veteran detectives to keep reports regarding their particular investigations and, upon completion, turn them over to the prosecutor. In all the decades of being in charge of the Detective Bureau, Defendant Solan only remembered providing "discovery" to the prosecutor on one occasion. The reason Defendant Solan followed up on the *Deneal document* was its potential relationship to the crime spree his

---

[3] Day 2; pp. 122 &155

10

team was investigating. At least four detectives investigated the Jaynes matter and two of them authored the *Deneal document*. The PCR Judge, who found the two items in question to be *Brady* material, characterized the failure to turn the reports over as unintentional. It is unwarranted to assess punitive damages against a supervisor for not turning over these documents.

2. **Ratio between Compensatory and Punitive Damages:**

The Supreme Court acknowledged that "heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect" or "when the value of injury and the corresponding compensatory award are small." *Exxon Shipping v. Baker,* 554 U.S. 471, 498 (2008). Here, the compensatory award is so large that there is frankly no need to assess a punitive damage award. It is also worth noting that the *Deneal document* was admitted into evidence so that Plaintiff could demonstrate what was or was not turned over. It is still a hearsay document that was inadmissible at the 1982 criminal trial and it still does not demonstrate that someone other than Hill committed the Jaynes crimes. In fact, the evidence remains to the contrary given the identifications discussed above. This fact should be considered when determining the appropriate amount of relief, if any, appropriately awarded to Plaintiff.

3. **Parallel Remedies/Overall need to punish and deter:**

There are no parallel state or federal remedies that come to mind in the form of criminal responsibility. Rather, the award of punitive damages against Defendant, Michael Solan, invokes the core principal that the amount be purposed to appropriately deter and punish. The amount of the jury's award will be deemed excessive if it exceeds what is required to serve the objectives of deterrence and punishment. See *McKinley v. Trattles*, 732 F.2d 1320 (7th Cir. 1984)(punitive damage award of $15,000 substantially exceeded the guideline and would result

in a windfall to McKinley). Michael Solan is 82 years old and in poor health, as evidenced by his being admitted to the hospital on two occasions during the course of the 3-week trial. Deterrence is not an issue in this case. He is no longer a police officer. The argument that the award sends a message to others is surely accomplished by the compensatory damage award and the total destruction of his reputation. Solan has been the target of newspaper articles attacking his character for at least 10 years (two of which appeared during the course of this trial and others that were attached to Defendants' Motion to Admonish the Plaintiff, his Counsel, and the jury to Refraib nfrom Media References and Research [DE 317]). Further, Detective Solan gained absolutely no monetary value from the alleged misconduct. Punitive damages are not warranted and the award of $500,000 was certainly excessive.

### III. CONCLUSION

Plaintiff has failed to establish that a Constitutional violation occurred because no admissible, material *Brady* evidence was intentionally withheld by the Defendants prior to his 1982 criminal trial. Plaintiff also failed to prove that Defendant, Michael Solan, is not entitled to qualified immunity because there was no clearly established law in 1982 that placed Defendant Solan or the detectives under Solan on notice that their specific actions violated Plaintiff's rights. Further, Plaintiff failed to prove that Defendant, Michael Solan was plainly incompetent or that he knowingly violated Plaintiff's rights. Thus, the Court should set aside the punitive damage award, direct a verdict and enter final judgment in favor of the Defendants and against Hill and for all other relief just and proper in the premises.

**WHEREFORE,** the Defendant, Michael Solan, requests the Court direct a verdict in favor of all defendants, extend the protection of qualified immunity to him, enter a final judgment order against the Plaintiff and for all other relief just and proper in the premises.

Respectfully submitted,

*/s/ Shana D. Levinson*
Levinson & Levinson
Shana D. Levinson
Donald P. Levinson
384 W. 80th Pl.
Merrillville, IN 46410

**CERTIFICATE OF SERVICE**

I, Shana D. Levinson, hereby certify that on the 1st day day of December 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to the following:

>Scott King
>Lakeisha Murdaugh
>King and Murtaugh
>9211 Broadway
>Merrillville, IN 46410
>sking@kingmurdaughlaw.com
>lakeisha@kingmurdaughlaw.com
>
>Russell Brown
>9223 Broadway, Ste E
>Merrillville, IN 46410
>rbrown@theregionlawyers.com
>
>David Jensen
>Robert Feldt
>Kyle Grothoff
>djensen@eichhorn-law.com
>rfeldt@eichhorn-law.com
>kgrothoff@eichhorn-law.com

>*/s/ Shana D. Levinson*
>Shana D. Levinson