UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JAMES HILL,

    Plaintiff,

    v.                          CAUSE NO.: 2:10-CV-393-TLS

CITY OF HAMMOND, INDIANA and
MICHAEL SOLAN,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on the parties' Joint Motion for an "Indicative Ruling" Pursuant to Fed. R. Civ. P. 62.1(a) Regarding the Parties' Joint Request to Vacate the Verdict and Judgment as a Condition Precedent to Settlement [ECF No. 399], filed on July 7, 2023. The parties represent that they have reached a settlement, conditioned upon this Court's vacating the Jury Verdict [ECF No. 347], the Clerk's Entry of Judgment [ECF No. 371], and the Court's grant of attorneys' fees [ECF No. 398]. In the Motion, the parties request that the Court indicate whether, upon remand from the Seventh Circuit Court of Appeals, the Court would grant a joint motion for vacatur of the jury verdict, judgment, and award of attorneys' fees. For the reasons stated below, the Court grants the Motion and indicates that it would grant the parties' motion to vacate on remand.

## PROCEDURAL HISTORY

The Plaintiff filed his Complaint [ECF No. 1] against the Defendants Frank DuPey, Richard Tumildalsky, Raymond Myszak, Michael Solan, and the City of Hammond, Indiana, on October 24, 2010, alleging that the Defendants violated his constitutional rights and bringing claims under 42 U.S.C. § 1983. The parties dismissed Defendant Tumildalsky by stipulation on

February 13, 2011. *See* ECF No. 35. The Court granted summary judgment in favor of Defendant DuPey on March 18, 2016, *see* ECF No. 205, and in favor of Defendant Myszak on March 30, 2016, *see* ECF No 207.

The Plaintiff proceeded to trial on his claims against Defendants Solan and the City of Hammond. The trial began on November 7, 2022, *see* ECF No. 325, and lasted eight days, *see* ECF No. 346. After closing arguments on the eighth day, the jury deliberated and reached a verdict in favor of the Plaintiff. *See* ECF No. 347. The jury awarded the Plaintiff $25 million in compensatory damages against Defendants Solan and the City of Hammond, and it awarded $500,000 in punitive damages against Defendant Solan. *Id.* The Clerk of Court entered judgment on January 24, 2023. ECF No. 371. The Court granted the Plaintiff's request for attorneys' fees, with modifications, on May 31, 2023. ECF No. 398.

The Defendants filed notices of appeal with the Court on February 23, 2023. ECF Nos. 377, 378. The parties then jointly filed the instant Motion on July 7, 2023. The parties indicate that the Seventh Circuit Court of Appeals ordered them to mediation, which took place on June 1, 2023. Mot. ¶ 5, ECF No. 399; *see* ECF No. 399-2. As a result of the meditation, the parties reached an agreement to settle this matter and another matter pending between them in this Court (Cause No. 2:22-CV-262). Mot. ¶ 5. The parties' agreement to settle is subject to multiple conditions precedent, including the vacatur of the jury verdict, judgment, and award of attorneys' fees in this Court and the approval of the parties' Settlement by the City of Hammond's Common Council. *See* Settlement 1–2, ECF No. 399-3.

On July 7, 2023, to satisfy the condition of settlement requiring vacatur of matters in this Court, the parties jointly filed the instant Motion. The parties represent as follows:

> If this Court indicates that it is inclined to grant the parties' *vacatur* request as per this Joint Motion, then the parties will ask the Seventh Circuit Court of Appeals to

remand this matter so that they can make a formal Motion To Vacate with this Court pursuant to RULE 60.

Mot. ¶ 6.

## DISCUSSION

The parties request that the Court indicate, pursuant to Federal Rule of Civil Procedure 62.1(a), whether it is inclined to grant their motion for relief under Rule 60(b). Rule 62.1(a) provides,

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: . . . (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a).

The Federal Rules of Appellate Procedure explain that where a district court "states either that it would grant the motion or that the motion raises a substantial issue," "the movant must promptly notify the circuit clerk." Fed. R. App. P. 12.1(a). In such cases, "the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal." Fed. R. App. 12.1(b).

The Court's next step, then, is to consider the parties' motion for vacatur under Rule 60(b)(6). "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [when] applying it prospectively is no longer equitable; or . . . [for] any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6). The relief provided under this rule is "fundamentally equitable in nature," *Ramirez v. United States*, 799 F.3d 845, 851 (7th Cir. 2015) (internal citations omitted), and must be "administered upon equitable principles," *Di Vito v. Fidelity & Deposit Co. of Md.*, 361 F.2d 936, 939 (7th Cir. 1966). In determining whether to vacate the jury verdict, judgment, and award of attorneys' fees in this case, "the Court will be guided by the array of equitable factors of justice and hardship

traditionally balanced by district courts in considering requests for Rule 60(b) relief," which include "the public interests in precedent, preclusion, and judicial economy" and "the circumstances, hardships, and interests of the private parties." *Mayes v. City of Hammond*, 631 F. Supp. 2d 1082, 1088 (N.D. Ind. 2008).

### A. Public Interests

#### 1. Precedential Value

Other than the persuasive value of the Court's award of attorneys' fees, there are no public interests in precedent that weigh against vacatur here. The parties have reached a settlement after years of litigation and numerous adjudications on the part of this Court, including a jury verdict, judgment, and award of attorneys' fees. The judicial decisions arising from a case, however, "are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994) ("Judicial precedents are presumptively correct and valuable to the legal community as a whole."); *see also Mfrs. Hanover Tr. Co. v. Yanakas*, 11 F.3d 381, 385 (2d Cir. 1993) ("[O]nce . . . a decision has been rendered we decline to allow [parties] to dictate, by purchase and sale, whether the precedent it sets will remain in existence."); *Matter of Mem'l Hosp. of Iowa Cnty., Inc.*, 862 F.2d 1299, 1300–02 (7th Cir. 1988) ("When a clash between genuine adversaries produces a precedent, however, the judicial system ought not allow the social value of that precedent, created at cost to the public and other litigants, to be a bargaining chip in the process of settlement.").

In contrast with an appellate court's decision to vacate one of its precedents, here, the Court is not as concerned with the policy of preserving precedential value because district court decisions "[do] not have stare decisis effect; [they] are not . . . precedent." *Midlock v. Apple Vacations W., Inc*, 406 F.3d 453, 457–58 (7th Cir. 2005) (internal citations omitted); *see Bank of*

4

*Am., N.A. v. Moglia*, 330 F.3d 942, 949 (7th Cir. 2003) ("[D]istrict court decisions cannot be treated as authoritative on issues of law."). Courts have also recognized that a jury verdict and judgment have little to no precedential value. *Mayes*, 631 F. Supp. 2d at 1090 (noting that a judgment based on a jury verdict "has no precedential value"); *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 605–06 (N.D. Ill. 2012) (noting that "a jury verdict alone has little or no precedential value" (internal citation omitted)); *Orlowski v. Eriksen*, No. 07 C 4015, 2010 WL 2401938, at *2 (N.D. Ill. June 10, 2010) (same).

Although the Court's award of attorneys' fees does not have precedential value, it does have persuasive value. *See Aetna Cas. & Sur. Co. of Hartford v. Kerr-McGee Chem. Corp.*, 875 F.2d 1252, 1255 n.2 (7th Cir. 1989) ("If there is no rule in the court rendering a decision limiting the precedential value of its opinions, those opinions may be cited and are entitled to whatever weight the persuasive force of their reasoning warrants."); *Midlock*, 406 F.3d at 458 ("[A district court decision] may be a wise, well-reasoned decision that persuades by the quality of its reasoning . . . ."). Courts or the public may find value in the opinion's substantive construction of the law, *see Mayes*, 631 F. Supp. 2d at 1090 (distinguishing cases with little to no precedential value with those containing substantive constructions of the law), or in the opinion's benchmark for a reasonable fee that speaks to the prevailing market rate for attorney services, *see Hill v. City of Hammond*, No. 2:10-CV-393, 2023 WL 3735593, at *2–3 (N.D. Ind. May 31, 2023) (concluding that a $350 hourly rate is reasonable in light of rates charged by similarly experienced attorneys in the community); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1312 (7th Cir. 1996) ("[R]ates awarded in similar cases are clearly evidence of an attorney's market rate."). The Court proceeds in evaluating the balance of equities that weigh in favor of or against vacatur keeping in mind the slight persuasive value of the Court's award of attorneys' fees.

   *2.     Preclusive Effect*

The Court is not concerned with issue preclusion, particularly in light of the parties' Settlement. "Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (citing Restatement (Second) of Judgments §§ 17, 27, pp. 148, 250 (1980); D. Shapiro, Civil Procedure: Preclusion in Civil Actions 32, 46 (2001)).

In *Mayes*, the Court expressed concern about the preclusive effects of its decisions because the plaintiff in that case, Larry Mayes, had a co-defendant in his criminal trial, James Hill, the Plaintiff in this case, who planned to bring a similar lawsuit against the same defendants. *Mayes*, 631 F. Supp. 2d at 1090. The Court determined that the possibility of its decisions having a preclusive effect in the later case was minimal and should not prevent vacatur. *Id.* Here, the Plaintiff's co-defendant from his criminal trial, Mayes, has already litigated his related claims. There is no possibility of this Court's decisions having preclusive effect in that regard.

The Plaintiff does have another lawsuit pending against the Defendants on related claims. *See Hill v. Nw. Ind. Major Crimes Task Force,* No. 2:22-CV-262. The preclusive effect of this Court's decisions on that case are also of no concern, however, because the Plaintiff has agreed to dismiss that case as part of the parties' Settlement. Settlement at 1–2. The potential preclusive effects of the jury verdict, judgment, and award of attorneys' fees therefore do not weigh against vacatur.

*3.     Judicial Resources*

The parties request the vacatur of a $25.5 million jury verdict and resulting judgment, which the jury reached after eight days of trial and subsequent deliberation. "The public has an interest not only in the court resources spent in preparation for and over the course of the lengthy trial but also in the value of the time and energy dedicated by the individuals serving on the jury." *Mayes*, 631 F. Supp. 2d at 1094.

The Court finds that the parties' Settlement will respect the judicial and public resources committed to reaching the jury verdict, judgment, and award of attorneys' fees. The parties represent that their litigation, including the trial, was necessary for the parties to reach an agreement as to the $9 million that the Plaintiff will receive in satisfaction of his claim. They represent that their agreement would not have been possible without the guidance provided by this Court through its rulings and the entry of judgment, and by the jury through its verdict. They acknowledge that the efforts of the Court and the jury, as well as the Court of Appeals through its mediation services, have been invaluable resources in leading the parties to reach an amicable settlement, which imposes significant fiscal responsibility on the Defendant City of Hammond, after more than ten years of litigation. Further, the parties state that their $9 million settlement honors the public's interest in judicial economy and efficiency, and it preserves the Defendant City of Hammond's need for fiscal solvency and certainty that allow it to provide essential public services for its tens of thousands of residents and those who pass within its boundaries.

As a result of the verdict, the Defendant City of Hammond will pay the Plaintiff $9 million. The parties' Settlement and its terms are of public record. If the parties' conditions precedent are satisfied and the parties effectuate their Settlement, it will "give permanent effect to a balancing of the unique circumstances and interests involved in this litigation [and] reflected in the jury's verdict." *Id.* at 1094. In addition, vacatur will not affect the Court's prior decisions

in this case, and "the substantial outcomes achieved through this litigation will remain." *Id.* at 1095.

The parties suggest, and the Court agrees, that the parties' Settlement conserves the resources of the Seventh Circuit and its mediation services, and it shows the efficacy of the mandatory mediation program. *See Quest Integrity USA, LLC v. A.Hak Indus. Servs. US, LLC*, No. 2:14-CV-1971, 2019 WL 1572691, at *2 (W.D. Wash. Apr. 11, 2019) ("[T]he public interest would be served by acknowledging the efficacy of the Federal Circuit's mandatory mediation program in which the parties participated, thereby encouraging future dispute resolution by means less costly of private and public resources than full-blown litigation."). Facilitating the parties' Settlement through vacatur allows the parties and the Seventh Circuit to avoid further briefing, oral argument, and, if the Defendants were to prevail on appeal, a new trial. Vacatur would permit the parties and the courts to avoid significant litigation costs and time that would otherwise be expended.

**B.     Private Interests**

In considering motions for vacatur in connection with settlement, courts have consistently recognized that "unique circumstances facing the parties, undue hardship that will result from denial of relief, and strong mutuality of interest in settlement can outweigh other interests and tip the balance in favor of . . . vacatur." *Mayes*, 631 F. Supp. 2d at 1095; *see e.g.*, *Wal-Mart Stores, Inc. v. Rodriguez*, 322 F.3d 747, 750 (1st Cir. 2003) (vacating a preliminary injunction that prevented the Secretary of Justice of the Commonwealth of Puerto Rico from pursuing an antitrust suit against Wal-Mart because Wal-Mart had an interest in ending litigation that "frustrated its need for business certainty" and the Secretary had an "institutional interest in vacating adverse rulings of potential precedential value"); *MLB Props., Inc. v. Pacific Trading Cards, Inc.*, 150 F.3d 149, 152 (2d Cir. 1998) (vacating the denial of an injunction because one

party "could not test the merits of the . . . opinion without risking the severe financial consequences" of waiting for the appellate court's ruling and because the other party had to contest the denied injunction or risk its effect on future litigation); *Motta v. Dist. Dir. of I.N.S.*, 61 F.3d 117, 118 (1st Cir. 1995) (vacating the lower court's decision because "the appellee acquires the absolute certainty of not being deported, while the government saves the costs and risk of litigation"). In this case the political pressures and obligations faced by the Defendant City of Hammond, the Plaintiff's personal circumstances, and the parties' mutual interest in their Settlement persuade the Court that the balance of equities support vacatur.

1. *The Defendants' Interests and Hardships*

The Defendants represent that this case involves a set of facts that originated forty years ago, yet the burden of its consequences must be borne by the present-day citizens of Hammond and their elected representatives. Several of the key individuals who were involved in the events of this case are deceased, such as then-Chief Frank Dupey and Detectives Charles Mak, Robert Townsell, and John Ratacjak. Defendant Michael Solan and Detectives Michael McPhillips and Raymond Myszak all retired long ago. "However, it is the present-day citizens of Hammond who have been called upon to address the issues presented by" the Plaintiff's claims. *Mayes*, 631 F. Supp. 2d at 1096.

The Defendant City of Hammond is a public entity, and its actions are subject to the political process. It represents that its elected representatives will take steps to seek public acceptance of the sizeable burden imposed upon its municipal budget by the $9 million Settlement with the Plaintiff. After mediation between the Defendant City of Hammond's Mayor, Corporation Counsel, and the Plaintiff's attorneys, the parties reached a conditional settlement. The Hammond Common Council will be called upon to approve the settlement bond necessary to fund the settlement. The Defendant City of Hammond represents that public

readings before the Hammond Common Council will take place soon and approval is expected. Thus, the citizens of Hammond and their elected representatives will undertake this public political process to ultimately accept the fiscal burden required to fund the contingent settlement.

As a municipality, the Defendant City of Hammond's ongoing obligations to its citizens weigh heavily in its balancing of the risks of settling against the potential benefits defending litigation. *Id.* (explaining that Hammond's weighing of hypothetical risks "implicates the citizens at large, including the financial costs of continued provision of police and fire services, proper roads, sidewalks, bridges, and other vital community services"). Whether the Defendants' appeal results in no liability or a multi-million-dollar loss, the Defendant City of Hammond remains obligated to meet the demands it owes its citizens. The Defendant City of Hammond thus expresses a heightened need for certainty regarding what burden, if any, to ask the present-day citizens of Hammond to bear.

The Defendants acknowledge that the present litigation, including the prior decisions of this Court and the potential rulings of the Seventh Circuit, imposes risks on them and factors into the landscape of 42 U.S.C. § 1983 litigation generally. The Defendant City of Hammond believes its police force was properly trained and supervised and that it did not violate the Plaintiff's civil rights. On appeal, the Seventh Circuit's ruling could vindicate that belief or affirm the verdict in favor of the Plaintiff. The Defendants acknowledge, however, that they have no guarantee of prevailing, which is why, through the terms of the Settlement, they have proposed to give up their opportunity to reverse the verdict and judgment.

The Defendant City of Hammond states that its citizens and elected representatives have chosen to undertake the public political process required to ultimately accept the substantial fiscal burden posed by this Settlement. The certainty created by the parties' Settlement will better allow the Defendant City of Hammond to meet the needs of its citizens. Although an

appellate ruling in their favor could eliminate that burden, the Defendants acknowledge they have no guarantee of prevailing on appeal and have agreed to the Settlement in light of that fact. The interests and hardships of both Defendants, as represented in their joint brief and relayed above, thus weigh in favor of vacatur.

2.  *The Plaintiff's Interests and Hardships*

The Plaintiff's lead counsel, Scott King, submitted an affidavit in which he states that the $9 million Settlement, although a compromise, sends a significant message to the Defendant City of Hammond and other local governments as to the consequence of the types of misconduct evidenced in this case. ECF No. 399-5 ¶ 10. He suggests that the Settlement substantially advances the policy goals of § 1983 litigation, including deterrence and compensation for victims of constitutional violations. *Id.* Further, particularly given the press coverage and legal fees in this case, this $9 million settlement post-trial would entice local governments to either prevent the occurrence of similar violations or risk a future judgment of the same kind. *Id.*

According to Attorney King's affidavit, the Plaintiff has suffered and continues to suffer significant hardships that justify vacating the verdict and judgment to facilitate the parties' Settlement. ECF No. 399-5 ¶ 11. Since his release from prison in 1998 after serving seventeen and a half years, the Plaintiff has had intermittent employment while supplementing his income by cutting hair. *Id.* at ¶ 13. He has worked nine different jobs, none for longer than a two-year period. *Id.* For much of this time, the Plaintiff was required to register as a sex offender for his 1980 conviction. *Id.* The Plaintiff is currently sixty years of age. *Id.* He has had knee and hip replacement surgery. *Id.* He is the father of three children. *Id.* Since 2017, he has lived solely on his fiancé's income. *Id.* The Plaintiff desires nothing more than to be able to live his remaining years free from financial worry while providing for his family, and he wishes to realize that goal as soon as reasonably possible. *Id.*

11

Considering the implications of the Settlement for the Plaintiff and the policy goals of § 1983 litigation, along with the circumstances faced by the Plaintiff, the Plaintiff's interests and hardships weigh in favor of vacatur.

## CONCLUSION

The balance of equities, including the public and private interests involved in this litigation, demonstrates that vacating the jury verdict, judgment, and award of attorneys' fees would be appropriate in this case. The only factor that weighs against vacatur is the persuasive value of the Court's award of attorneys' fees, but the hardships faced by the parties and their mutual interest in settlement nonetheless tip the balance in favor of vacatur. In addition to the $9 million settlement the Plaintiff will receive, the parties' dispute will end without further litigation at the appellate or district court level and without committing substantial resources—both from the parties and the courts—toward resolution of another lawsuit, namely *Hill v. Nw. Ind. Major Crimes Task Force,* No. 2:22-CV-262.

For the reasons stated above, the Court hereby GRANTS parties' Joint Motion for an "Indicative Ruling" Pursuant to Fed. R. Civ. P. 62.1(a) Regarding the Parties' Joint Request to Vacate the Verdict and Judgment as a Condition Precedent to Settlement [ECF No. 399] and indicates that upon remand from the Seventh Circuit Court of Appeals for such purposes, the Court would be inclined to grant the parties' request to vacate the Jury Verdict [ECF No. 347], the Clerk's Entry of Judgment [ECF No. 371], and the Court's grant of attorneys' fees [ECF No. 398].

SO ORDERED on July 21, 2023.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT