UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JAMES HILL,                         )
   the Plaintiff,               )
       v.                    )        Cause No. 2:10-cv-393-TLS
CITY OF HAMMOND, *et al.*,          )
   the Defendants.              )

BRIEF OF THE PARTIES IN SUPPORT OF [DE402],
THE JOINT MOTION TO VACATE AND DISMISS

The Plaintiff, James Hill, ("Hill"), and the Defendants, City of Hammond, ("Hammond"),

and Michael Solan, Jr., ("Solan"), and pursuant to FED.R.CIV.P. 60(b)(5) and (6), state the following

for their Brief filed in support of their Joint Motion To Vacate And To Dismiss, ([DE403], "Joint

Motion"),[1] that this Honorable Court enter a final judgment order which: 1) vacates the November

22, 2022 jury verdict, [DE 347], the January 24, 2023 Judgment, [DE 371], and the May 31, 2023

Award of Attorney's Fees and Costs in this action, [DE 398], in order to fulfill a necessary condition

precedent of the parties' contingent settlement and; 2) dismisses this matter with prejudice, with each

party to bear its own costs and attorney's fees:

## I.  INTRODUCTION

The parties in this action have traveled a long and arduous road with each other, and with the

Court. Their disputes have been many and hard-fought. The events involved span more than forty

(40) years; many pertinent witnesses and even past parties are deceased. Mayor Thomas McDermott,

the chief executive for Hammond, was eight (8) years old on October 5, 1980, when Lisa Jaynes was

raped and robbed. Solan retired from Hammond's Police Department more than fifteen (15) years

ago, and he is quite elderly and infirm, as the Court is aware from his hospitalization and absence

---

[1]Abbreviations used in the parties' Joint Motion are also used in this Brief.

during portions of the November, 2022 trial. As for Hill, this has been an especially long battle, considering his years of incarceration, years of post-conviction proceedings, the length of this civil suit, including its interruption by his separate prosecution for murder, which culminated in his filing of the *NWI Joint Task Force* case.

But through their own long-expended efforts, and those of the Court and the jury, the parties have reached a cross-road at this time by which, through this Court's assistance and RULES 60(b)(5) & (6) and 62.1(a), they can avoid the potential years and high financial and personal costs of further battles in the federal appellate court system and hypothetical re-trial, and a second long lawsuit in this District Court. The parties have finally reached an agreement by which they can resolve this action amicably and bring it to an end, but also their disputes in the *NWI Joint Task Force* case, which is but in its infancy at the pleading motion practice stage.

The peace that the parties are seeking to achieve requires only that certain contingencies be met. Now that the case has been remanded from the Seventh Circuit, this Court's willingness to enter an order pursuant to RULES 60(b)(5) & (6) which vacates the November 22, 2022 jury verdict, [DE347], the January 24, 2023 Judgment, [DE371], and the May 31, 2023 Award of Attorney's Fees and Costs, [DE398], is all that is needed n order to fulfill this condition precedent of the parties' combined settlement of both this above-captioned action and the *NWI Joint Task Force* case. (See also [DE 401].)[2] This Court graciously indicated that it would indeed assist the parties in reaching an amicable resolution of this dispute, and the Seventh Circuit also has accommodated the parties by its August 7, 2023 remand order. (See [DE402; DE402-1].) The parties now come to this Court

---

[2]The other condition precedent, the passage of funding ordinances, has already been satisfied.

2

to complete this one last step, by formally vacating [DE 347, 371 & 398], and dismissing this matter with prejudice by agreement. [DE403]

## II.  DISCUSSION

### A.  The Applicable Review Standard

RULE 60(b) states the following, in relevant part:

**RULE 60. RELIEF FROM A JUDGMENT OR ORDER**

(B)   GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PRO-CEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief. . . .

RULES 60(b) "vest power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 615 (1949), Specifically referencing RULE 60(b)(5), the Supreme Court has held that:

FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, "applying [the judgment or order] prospectively is no longer equitable."

*Horne v. Flores,* 557 U.S. 433, 447 (2009). *Accord* RULE 60(b)(6). The balancing of the public and private equities that the Court undertook in entering its decision at [DE401] remain the same now upon remand. For the reasons stated in [DE401 and herein, those equities justify the parties' *vacatur* request, inasmuch as *vacatur:* a) presents the parties with the opportunity for the Defendants to satisfy both of Hill's claims against Solan and Hammond; b) satisfies Hill's current need for personal

3

and financial peace, (see [DE403-5]); c) for Solan and Hammond, it grants them the release and

discharge that they both require, which also provides Hammond with fiscal clarity and finality, so

as to provide for the health, safety and welfare needs of its residents, (see [DE401] and this Section,

*infra,* generally); and d) imposes no burden upon the needs of the public because *vacatur* results in

little or no loss of precedent or persuasive findings. [DE401, generally]

> As this Court aptly stated in [DE401]:

> The relief provided under this rule is "fundamentally equitable in nature," *Ramirez v. United States,* 799 F.3d 845, 851 (7th Cir. 2015) (internal citations omitted), and must be "administered upon equitable principles," *Di Vito v. Fidelity & Deposit Co. of Md.,* 361 F.2d 936, 939 (7th Cir. 1966). In determining whether to vacate the jury verdict, judgment, and award of attorneys' fees in this case, "the Court will be guided by the array of equitable factors of justice and hardship traditionally balanced by district courts in considering requests for Rule 60(b) relief," which include "the public interests in precedent, preclusion, and judicial economy" and "the circumstances, hardships, and interests of the private parties." Mayes v. City of Hammond, 631 F. Supp. 2d 1082, 1088 (N.D. Ind. 2008).

[DE401, pp. 3-4] The discretion to make "case-by-case" assessments concerning the justice of

granting a requested *vacatur* is squarely committed to the sound discretion of the district courts. *See*

*e.g. Williams v. Hatcher,* 890 F.2d 993, 995 (7th Cir. 1989); *Spika v. Village of Lombard,* 763 F.2d

282, 284–86. *See also Watson v. Symons Corp.,* 121 F.R.D. 351, 356–57 (N.D. Ill. 1988) (relief

required to achieve "just result"); *Schmitt v. American Family Mut. Ins. Co.,* 187 F.R.D. 568, 571,

576 (S.D. Ind. 1999) (finding extreme hardship).

One of the key bases for granting such RULE 60(b) relief is whether a party or the parties

agree that there has been satisfaction of the purposes of the litigation and/or rulings at issue. *See e.g.*

*Shakman v. Pritzker,* 43 F.4th 723, 728, 730 (7th Cir. 2022).

The standards supplied by RULE 60(b)(5) of the FEDERAL RULES OF CIVIL PROCEDURE guide our analysis. The RULE authorizes a district court to relieve a party from a judgment or order if either (1) "the judgment has been satisfied, released, or discharged" or (2) "applying it prospectively is no longer equitable." FED.R.CIV.P. 60(b)(5). Governor Pritzker has made the necessary showings on both fronts, and the district court abused its discretion in concluding otherwise. . . . The controlling question in determining whether to vacate the 1972 decree is whether the Governor has satisfied its objectives, including by implementing a durable remedy to avoid systemic future constitutional violations. We believe he has.

*Shakman,* 43 F.4th at 728, 730, (citations omitted). As in *Shakman,* while not a complete remedy from the perspective of either side, the parties have reached a joint accord on a resolution that satisfies both sides — which more than supports and justifies this *vacatur* request. *Id.*

The Supreme Court has observed that the authority vested in district courts pursuant to RULE 60(b) to vacate judgments and orders entered by them is separate and independent of the authority of appellate courts and the Supreme Court to "modify, vacate, set aside, or reverse" judgments or orders "brought to them for review." 28 U.S.C. § 2106; *see also U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 29 (1994). In particular, the Court noted that "[o]f course, even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for *vacatur* of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to FEDERAL RULE OF CIVIL PROCEDURE 60(b)." *Id.*

In light of this reservation of a district court's authority even after an appellate determination that *vacatur* was inappropriate, *Bonner Mall* strongly indicates - as the Seventh Circuit noted in its seminal opinion in *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.,* 471 F.3d 1002 (7th Cir. 2007) - that the "exceptional circumstances" test described in that opinion does not bind a district court considering a RULE 60(b) requests for *vacatur* of a judgment on remand from an

5

appellate court. *Id.* at 1003–04. Significantly, the Seventh Circuit cited with approval the Ninth Circuit's decision in *American Games, Inc. v. Trade Prods., Inc.,* 142 F.3d 1164 (9th Cir. 1998), which affirmed a district court's decision to vacate even without a "finding of 'exceptional circumstances,'" and held that district courts considering whether to grant *vacatur* were free to balance the equities in the same manner that they had traditionally done pursuant to their RULE 60(b) authority. *Id.* at 1168–69 & n.1; *see also Marseilles,* 481 F.3d at 1003 (*citing American Games,* 142 F.3d at 1168–69). As the court in *American Games* observed, "the fact-intensive nature of the inquiry required" in considering a request for RULE 60(b) relief renders it "appropriate that a district court should enjoy greater equitable discretion when reviewing its own judgments than do appellate courts operating at a distance." 142 F.3d at 1170.

Thus, now that remand has been ordered by the Seventh Circuit in this matter, this Court has the authority pursuant to RULE 60(b)(5) and (6) to grant the parties' joint request to vacate the judgment and jury verdict upon finding that *vacatur* is justified by a favorable balance of equitable factors. *Id.; Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002 (7th Cir. 2007); RULE 60(b)(5), (allowing a judgment to be vacated when "applying it prospectively is no longer equitable"). So this Court may now entertain the parties' formal joint motion pursuant to RULE 60(b)(5) and (6). *Bonner Mall*, 513 U.S. at 29; *United States v. Munsingwear, Inc.,* 340 U.S. 36 (1950).

> . . . . [E]ven in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for *vacatur* of a district court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to FEDERAL RULE OF CIVIL PROCEDURE 60(b).

*Bonner Mall,* 513 U.S. at 23-24.

6

> The equitable remedy of *vacatur* ensures that "those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review.

*Munsingwear,* 340 U.S. at 39. *See also Gould,* 11 F.3d at 83-85. A district court has the authority, therefore, to assess all of the equities involved, both public and private, in order to consider and grant a request to vacate such as the parties jointly make here in order to fulfill this condition precedent of their anticipated combined settlement. *See e.g. Mayes v. City of Hammond,* 290 Fed.Appx. 945 (7th Cir. 2008) (remanding to the district court for a similar *vacatur* motion); *Mayes v. City of Hammond,* 621 F.Supp.2d 1082 (N.D.Ind. 2008) (applying the *Bonner Mall/Marseilles Hydro Power* standards to grant *vacatur*); *Renal Care Group Ind. v. City of Fort Wayne,* 2020 U.S. Dist. LEXIS 97738 (N.D.Ind. June 4, 2020) (applying the *Bonner Mall/Marseilles Hydro Power* standards to grant *vacatur*); *accord Smith v. Saul,* 2021 U.S. Dist. LEXIS 14654 (N.D.Ind. January 22, 2021) (noting the *Bonner Mall/Marseilles Hydro Power* review process); *Lundsten v. Creative Cmty. Living Servs.,* 2016 U.S. Dist. LEXIS 3077 (E.D.Wisc. January 11, 2016) (applying the *Bonner Mall/Marseilles Hydro Power* standards and following *Mayes,* 621 F.Supp.2d 1082 to grant *vacatur*).

Indeed, besides the *Mayes* opinion, numerous district court decisions within the Seventh Circuit have recognized and exercised this discretion to vacate judgments, as the parties seek here, in order to favor public and private interests as a condition precedent to settlement. *See Gould v. Bowyer,* 11 F.3d 82, 83-85 (7th Cir. 1993) (affirming the district court RULE 60(b) *vacatur* order); *Quad Cities WATERKEEPER INC. v. Ballegeer,* 2018 WL 10435263, at *1 (C.D.Ill. 2018); *Stryker Spine, a Division of Howmedica Osteonics Corp. v. Spine Group of Wisconsin,* LLC, 320 F.Supp.3d 985, 988 n.1 (E.D. Wis. 2018); *Lundsten v. Creative Community Living Services, Inc.,* 2016 WL 111431, at *1 (E.D.Wis. 2016); *Orlowski v. Eriksen,* 2010 WL 2401938, at *3 (N.D.Ill. 2010); *In*

*re Rehabilitation of Ambac Assur. Corp.,* 2013 WL 3466812, at *2 (W.D.Wis. 2013); *Norville v. Veteran Solutions, Inc.,* Case No. 4:14-cv-4018-SLD-JEH, at [DE36], (C.D.Ill. May 18, 2017); *Mitsui Sumitomo Ins. Co., Ltd. v. Watkins Motor Line,* 2005 U.S. Dist. LEXIS 12600 (N.D.Ill. 2005); *Aptargroup, Inc. v. Owens- Illinois, Inc.,* 2003 U.S. Dist. LEXIS 18758 (N.D. Ill. 2003); *Budget Rent a Car Corp. v. G & M Truck Rental,* 2003 U.S. Dist. LEXIS 24009 (N. D. Ill. 2003); *Schmitt v. American Family Mut. Ins. Co.,* 187 F.R.D. 568, at 575–76 (S.D. Ind. 1999); *Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.,* 913 F. Supp. 1088, 1147 (N.D. Ill. 1995); *Schulze v. Illinois State Police,* 764 F. Supp. 495 (N.D. Ill. 1990).[3] These federal courts have been "guided by the array of equitable factors of justice and hardship traditionally balanced by district courts in considering requests for Rule 60(b) relief and presented in this case, including the public interests in precedent, preclusion, and judicial economy and the circumstances, hardships, and interests of the private parties." *Mayes,* 621 F.Supp.2d at 1088.

This particular federal lawsuit presents a unique situation, because this Court's task in ruling upon the parties' Joint Motion has already been addressed in the past by one of its own Magistrate Judges following a similar remand from the Seventh Circuit - *Mayes*. *Mayes,* 290 Fed.Appx. 945; *Mayes,* 621 F.Supp.2d at 1083-84. At least one other district judge in this district has described Magistrate Judge Cherry's rationale in *Mayes* as "beyond reproach," and noted that is has often been cited approvingly by other federal courts.

---

[3]And as Magistrate Judge Cherry's opinion in *Mayes* demonstrates, circuit and district courts in other circuits also have vacated judgments pursuant to RULE 60(b) under similar circumstances to those present here. *Mayes,* 621 F.Supp.2d at 1089, 1095.

8

Judge Cherry's rationale in *Mayes* is, as always, beyond reproach, and has been cited with approval by both courts and observers writing on the issue of vacatur. *See, e.g., Lundsten v. Creative Cmty. Living Servs., Inc.,* 2016 WL 111431 at *2 (E.D. Wisc. January 11, 2016); Paul A. Avron, *A Primer on Vacatur of a Prior Court Order as Part of a Settlement Agreement;* Recent Case Law, 64-MAR Fed. Law 10 (2017).

(See [DE104, p. 2] in *Renal Care Group Ind. v. City of Fort Wayne,* Cause No. 1:17-CV-65-HAB in the United States District Court for the Northern District of Indiana.) *See also Mayes,* 621 F.Supp.2d at 1086-88, [fns. omitted].[4]

Therefore, the weight of authority from the Seventh Circuit, consistent with Supreme Court precedent, supports this Court's independent discretion pursuant to Rule 60(b) to determine the propriety of the parties' request for *vacatur* on the basis of its own assessment of the range of equitable factors before it, and determination of whether the balance of justice and hardships weighs in favor of relief. While, as discussed below, the factors to be considered undoubtedly include those public policy considerations enumerated by *Bonner Mall,* the authority of this Court under RULE 60(b) is not cabined by the "exceptional circumstances" standard enunciated in that ruling. Now that the Seventh Circuit Court of Appeals has remanded this matter, it is clear that this Court will "not be not bound by the exceptional circumstances test for *vacatur* applied by a court of appeals, but rather must balance the equities of public and private factors to determine whether *vacatur* is appropriate." *Mayes,* 621 F.Supp.2d at 1085, *citing* RULE 60(b). The parties here are in agreement that "all of the equities, both public and private" involved in their request to vacate, including the circumstances of Hill's current life, Hammond's and Solan's financial situation, the amicable

---

[4]Magistrate Judge Cherry did include a lengthy list of cases in which district court decisions within the Seventh Circuit have recognized and exercised this discretion to vacate judgments, as the parties seek here, in light of or as conditions precedent to settlement. *Mayes,* 621 F.Supp.2d at fn 2. Thanks in part to Magistrate Judge Cherry's well-reasoned opinion in *Mayes,* that list has continued to grow. (See post-2008 authorities cited in this Brief.)

settlement agreement, the joint nature of the request for *vacatur,* the resolution of a second lawsuit between the parties, and the lack of any significant public interest, satisfy the standard for granting the parties' joint request for *vacatur.* (See Section II.B. of this Brief.)

**B.  The Court Should Grant The Parties' *Vacatur* Request.**

In determining the parties' joint request for *vacatur* the Court should, as in any request for RULE 60(b) relief, conduct a balancing of equities including the circumstances and hardships of the parties, and any public interests at stake. *See* RULE 60(b)(5) and (6); *Marseilles,* 471 F.3d at 1003–04; *American Games,* 142 F.3d at 1168–70; *Watson,* 121 F.R.D. at 356–57; *Schmitt,* 187 F.R.D. at 576. Here, that balance consists, on the one hand, of the extraordinary circumstances that are presented by Hill's wrongful incarceration, and physical and economic hardships, as well as by Hammond's unusual posture as a governmental entity with unique legal, political, and financial constraints; and, on the other hand, the relatively insubstantial public interest in denying relief given the limited - if any - preclusive effects that could in actuality attach to the verdict and judgment.

Until recently, this case was currently pending on appeal in the Seventh Circuit Court of Appeals. After having entered a briefing schedule, the Seventh Circuit ordered the parties to participate in a FED.R.APP. 33 mediation, which ultimately proved successful in establishing the terms of a contingent settlement of both this matter and the *NWI Joint Task Force* case. (See [DE403-2, 3 and 5].) As noted above, the remaining contingency that the parties seek to resolve now that the case has been remanded is an order of *vacatur* from this Court. Such an order will result in a payment to Hill of a $9,000,000.00 settlement, (double the amount received by Larry Mayes, see *Mayes,* 621 F.Supp.2d at 1096-97), and the dismissal of both the Seventh Circuit appeal in this matter and the *NWI Joint Task Force* case as to the parties defendant herein, thus ending more than

ten (10) past years of litigation between the parties, and the additional years of litigation between them that lie ahead in these two lawsuits. The parties are in agreement that the condition precedent of *vacatur* is warranted regardless of whether the Court conducts an equitable balancing of the relevant factors pursuant to its RULE 60(b) discretion, or instead looks only to the "exceptional circumstances" standard.

The parties urge this Court to agree with them once again, [DE401, pp. 4-12], and find that that the facts and issues here justify *vacatur* when balancing the public and private equities. As this Court noted, there is little or no precedential value to the verdict/judgment given the highly-fact sensitive issues related to the material events that occurred in this case more than forty (40) years ago. [DE401, 4-6] Magistrate Judge Cherry found that to be true even with regard to Hill's then-pending claim, given the highly-fact sensitive and differing nature of their respective claims even though they both arose from convictions for the same October 5, 1980 rape and robbery. *Mayes,* 621 F.Supp.2d at 1090-94. There also will be no further risk of re-litigation of these matters. Moreover, the time and energy expended by the jury and the Court in arriving at the verdict and judgment also will be honored by both the sizeable settlement which Hill will receive, and also the resolution of all issues between these parties that the Court, and possibly a future jury, will not be required to expend in the nascent *NWI Joint Task Force* case insofar as the parties defendant herein are involved.[5] Likewise, the private interests of the parties, such as Hill's current age, and physical and economic needs "while awaiting resolution of this matter, and his interest in vindicating his wrongful incarceration through settlement, as well as Hammond's unique posture as a governmental entity with

---

[5]For an understanding of the distinction between Hill's allegations against Hammond and Solan v. his allegations against the other Task Force defendants, see [DE71, 84-88, 130-138] in the *NWI Joint Task Force* case.

singular legal, political, and financial constraints," *Mayes,* 621 F.Supp.2d at 1088, warrant granting their agreed request for *vacatur*. The parties here seek a rare peace that is forty (40) years old and forty (40) years in the making; they do not feel that there is any reason for denying them this opportunity to see that peace to fruition.

### 1. The Public Interest Weighs in Favor of Allowing *Vacatur.*

"As courts in the Seventh Circuit and elsewhere have noted, in circumstances where *vacatur* does not diminish the effect of judicial precedent or does not unduly impinge on judicial resources, the public interests cited by *Bonner Mall* are diminished and *vacatur* is appropriate. *Mayes,* 621 F.Supp.2d at 1089, *citing Gould,* 11 F.3d 82, 84-85, (approving *vacatur* of decision by district court and noting limited precedential authority of district court opinion); *Microsoft Corp. v. Bristol Tech., Inc.,* 250 F.3d 152, 155 (2d Cir. 2001) (granting *vacatur* of a district court opinion based, in part, on its limited precedential value); *BMC, LLC v. Verlan Fire Ins. Co.,* No. 04-CV-0105A, 2008 U.S. Dist. LEXIS 56178, 2008 WL 2858737, *2 (W.D.N.Y. July 22, 2008); *Automobile Club of S. California v. Mellon Bank (DE) Nat'l Ass'n,* 224 F.R.D. 657, 659 (C.D. Cal. 2004).[6] *See also Orlowski,* Case No. 07-C-4015, 2010 WL 2401938, at *2 n.1 (N.D. Ill. June 10, 2010) (quoting Gould, 11 F.3d at 84, ("A district court decision binds no judge in any other case, save to the extent that doctrines of preclusion (not stare decisis) apply. Its only significance is as information . . .")).

---

[6]"In view of the resources already expended by both parties in litigating the instant dispute, in addition to the agreement reached before the Mediator, there appears to be little chance of relitigation. Because the settlement is final, the effect of *res judicata* is of secondary importance. Moreover, the instant action involved a fact specific contract formed under Delaware law. As a result, there is little precedential value in the Opinion and Order at issue." *Mayes,* 621 F.Supp.2d at 1089, *(citing quote from Mellon Bank)*.

As in *Mayes,* the Court previously found that the potential preclusive effect of the judgment in this forty (40) year-old matter is so unlikely that it does not counsel against *vacatur*. [DE401, pp. 4-6]; Mayes, 621 F.Supp.2d at 1090-94. Nor will there be any re-litigation between these parties of the claims in this matter or the *NWI Joint Task Force* case. Finally, "the public and judicial resources in this case will not have been squandered as a result of *vacatur*; rather, the *vacatur* guarantees that the liability imposed by the jury on [Hammond and Solan] is respected and the financial award to [Hill] is effectuated," rather than potentially erased if Solan, and especially Hammond, prevail in their appeals. *Mayes,* 621 F.Supp.2d at 1089, [bracket material added].

### a. No Judicial Precedent will be Vacated.

As in *Mayes,* the parties in this case are not seeking to vacate any published decisions of the Court, but rather a judgment based on a jury verdict, which in and of itself has no precedential value.

> Thus, the concern expressed in *Bonner Mall* that "judicial precedents are . . . not merely the property of the private litigants," 115 S. Ct. at 392, has no application here. A number of cases concerned by the effect *vacatur* would have on precedent, including *Bonner Mall* and *Memorial Hospital* and district court cases within the Seventh Circuit, can be distinguished on this important basis as the parties in these cases were seeking to vacate orders or published opinions which contained sub-stantive constructions of the law. *See, e.g., Bonner Mall,* 513 U.S. at 26 (seeking to vacate a decision of the court of appeals construing trademark law); *Memorial Hospital,* 862 F.2d at 1301 (seeking to vacate a district court order and opinion con-cerning a bankruptcy court contempt finding).

*Id.* at 1089. As noted above, the ultimate factual basis of Hill's *"Brady"* claim against Hammond and Solan, relating to two specific and unique documents involved in a combined investigation of a series of potentially-related crimes committed in the Fall of 1980, and the *Monell* claim against Hammond that corresponds to that specific *"Brady"* claim, (*see e.g.* [DE289, DE333-334, 336-338; DE350]), were completely different from the alleged constitutional violations claimed by Larry

13

Mayes in his case, even though both men were convicted for the same October 5, 1980 rape and robbery. *Id.* at 1090-94. In fact, Magistrate Judge Paul Cherry accurately predicted that Hill would not be able to take advantage of any ruling in *Mayes* to prosecute his own claim. Larry Mayes' case is itself long-resolved and he is now deceased. Conversely, to the extent that some evidence elicited in this matter has value in some other hypothetical, (and well-aged), claim, that evidence will not be lost through *vacatur* of the verdict and judgment here. Simply put, the forty (40) year-old facts and issues involved in Hill's claims against Hammond/Solan will not otherwise have any precedential value that hypothetically might be lost through *vacatur.* This factor is thus not a basis for denying the parties' Joint Motion.[7]

The Court was correct in noting that its fee order does have some persuasive value. [DE401, pp. 4-6] But

> "[o]ther than the persuasive value of the Court's award of attorneys' fees, there are no public interests in precedent that weigh against vacatur here. . . . The Court proceeds in evaluating the balance of equities that weigh in favor of or against vacatur keeping in mind the slight persuasive value of the Court's award of attorneys' fees."

[DE401. pp. 4, 5] That slight risk of persuasive value is weighed against all of the other factors that favor vacatur. (See [DE399-401, 403], generally.)

### b. The Public Interest in the Judicial Resources Expended Will be Respected through the Parties' Settlement.

As noted earlier, the judicial resources expended in preparation for and during the trial of this matter, and the efforts of the jurors, will be respected by the parties' settlement of this case and the *NWI Joint Task Force* case despite an order vacating the verdict and judgment. The parties represent

---

[7]Magistrate Judge Cherry also noted that his prior summary judgment order would remain of record on the docket as an aspect of his finding that the public factors favored *vacatur*. The same is true of [DE205, 207] in this matter, in which the Court granted partial dispositive relief.

that these steps were necessary in order for the parties to reach an agreement as to the $9,000,000.00 amount which Hill will receive in satisfaction of his claim. The parties further represent that this agreement would not have been possible without the guidance that was provided by both this Court through its rulings and entry of the January 24, 2023 judgment, and the jury through its November 22, 2022 verdict. The parties acknowledge that the efforts of the Court and the jury, as well as the Court of Appeals through its mediation services, have been invaluable resource in leading the parties to reach an amicable settlement after more than ten (10) years of litigation, a settlement that imposes significant fiscal responsibility upon Hammond for the liability imposed by the jury. At the same time, while Hill will receive this sizeable recovery, "the public good will be additionally served by providing a lesser and more predictable burden for the citizens of Hammond to bear," *Mayes,* 621 F.Supp.2d at 1094-95, while still allowing it to preserve its remaining funds to provide the essential public services that it must as an Indiana municipality. Thus, this $9,000,000.00 settlement not only honors the public interests in judicial economy and efficiency and the Court's and jury's time and effort, especially given the uncertainties of an appeal outcome, it also preserves Hammond's need for fiscal solvency and an assured result so that it may continue to provide essential public services to the tens of thousands of its residents and the many others who pass within its boundaries.

The parties' settlement also conserves the resources of the Seventh Circuit Court of Appeals, as well as the value of Seventh Circuit's mediation services. The public interest "would be served by acknowledging the efficacy of the [Seventh Circuit's] mandatory mediation program in which the parties participated, thereby encouraging future dispute resolution by means less costly of private and public resources than full-blown litigation." *Quest Integrity USA, LLC v. A.Hak Industrial Services US,* LLC, 2019 WL 1572691, at *2 (W.D. Wash. 2019). *Accord Mayes, supra; Lundsten,* 2016 WL

15

111431, at *1, (both approving *vacatur* following Seventh Circuit remand, and despite extensive litigation and trial over a period of years in the respective district courts). Here, there is no doubt, that briefing and oral argument on appeal, and if the Defendants were to prevail on appeal, possibly a new trial, all will be avoided because of the success of the Seventh Circuit's mediation services in this case. Both the parties and the federal courts of this Circuit will avoid significant litigation cost and time that otherwise would be expended.

### 2.  The Private Interests of the Parties Weigh in Favor of *Vacatur*.

"As courts that have considered motions for *vacatur* in connection with settlement have consistently recognized--both appellate courts in applying the *Bonner Mall* test and district courts acting pursuant to their RULE 60(b) authority--unique circumstances facing the parties, undue hardship that will result from denial of relief, and strong mutuality of interest in settlement can outweigh other interests and tip the balance in favor of finding 'exceptional circumstances' and other equities to warrant *vacatur*."  *Mayes,* 621 F.Supp.2d at 1095, (c*iting Wal-Mart Stores, Inc. v. Rodriguez,* 322 F.3d 747 (1st Cir. 2003) (granting vacatur of preliminary injunction decision in Section 1983 action); *Major League Baseball Props., Inc. v. Pacific Trading Cards, Inc.,* 150 F.3d 149 (2d Cir. 1998) (granting *vacatur* of preliminary injunction decision in trademark case); *Motta v. District Director of INS,* 61 F.3d 117 (1st Cir.1995) *(per curiam)*. (See also other authorities cited in Section II.A., *supra.*) In this case, the parties face unique personal and institutional pressures and hardships that make *vacatur* a highly appropriate remedy and outcome.

### a.  The Defendants' Interests and Hardships

The Defendants assert that this case presents an unusual factual and legal setting. Hill's claims arose from events that occurred more than forty (40) years ago, events which have little or nothing to do with present-day Hammond and its current police force. Many city administrations have come and gone since then. Most of the key persons involved in those events are deceased, such as then-Chief Frank Dupey and Dets. Charles Mak, Robert Townsell and John Ratacjak. Then-Lt. Michael Solan, and Dets. Michael McPhillips and Raymond Myszak all retired long ago. However, it is the present-day citizens of Hammond who have been called upon to address the issues presented by Hill's claims.

As a municipality, Hammond is unlike private litigants in that weighing the hypothetical risks of settling versus defending litigation implicates the citizens at large, including the financial costs of continued provision of police and fire services, proper roads, sidewalks, bridges, and other vital community services. These ongoing demands that Hammond owes to its citizens, if unmet, result in far more than the loss of an investment, as in the case of a private corporation. In evaluating this highly unusual case, with the potential results on appeal of no liability or a loss in the many millions of dollars, Hammond expresses a heightened need for a more tangible means of determining what burden, if any, to ask the present-day citizens of Hammond to bear.

And, in a process that does not occur in most of its litigation, Hammond's elected representatives have undertaken several steps in this case to obtain public acceptance of the still sizeable burden imposed upon the municipal budget by Hammond's $9,000,0000.00 settlement with Hill. After the Mayor and Corporation Counsel mediated with Hill's attorneys on several occasions, and have now reached a conditional settlement, the conditional settlement has still been subjected to the

17

political process. The Hammond Common Council has already been called upon and approved the settlement bond necessary to fund the settlement in public hearings Through this political process, the residents of Hammond and their elected representatives have chosen to accept this fiscal burden to fund this contingent settlement.

In terms of its current litigation risk, Hammond believes that its police force was properly trained and supervised, and that it did not violate Hill's civil rights. Should Hammond prevail on appeal, either a judgment entered by the Seventh Circuit Court of Appeals in its favor will replace outright the current verdict and judgment, or a new trial will undo the verdict and perhaps certain legal rulings. But Hammond acknowledges that it has no guarantee of prevailing; that is why, through the terms of the settlement, Hammond and Solan have given up its opportunity to be vindicated by a reversal of the verdict and judgment, including the impact that a Seventh Circuit Court of Appeals' opinion in their favor might have on 42 U.S.C. §1983 cases generally.

The Citizens of Hammond and their elected representatives have thus chosen to undertake this public political process and to ultimately accept the substantial fiscal burden posed by this settlement. None of these steps, nor this outcome, would have been possible without the guidance which has been provided by this Court and the jury through the verdict and judgment. That is why the efforts of the litigants, the Court and the Jury have been an invaluable resource in leading the parties to reach at long last an amicable settlement. Hammond will defer to Hill with regard to his opinion as to the effect of *vacatur* and its effect relative to his needs and motivations. For its own part, however, Hammond strongly feels that the efforts of the Court and the Jury will not be wasted or go unacknowledged by *vacatur.* To the contrary, allowing the parties to complete their settlement actually will give permanent effect to a balancing of the unique circumstances and interests involved

18

in this litigation. The interests and hardships of Hammond and Solan are therefore in favor of *vacatur,* regardless of which standard is applied.

### b.  Hill's Hardships and Interests

Given that *vacatur* of the judgment and verdict in this case would have little impact on third parties and would still respect the jury's finding of liability and grant of a substantial monetary award in the amount of $9,000,000.00 to Hill, Hill's current needs and hardships also weigh in favor of *vacatur,* and constitute exceptional and compelling circumstances that justify the relief sought. From Hill's perspective, the $9,000,000.00 settlement, although a significant compromise, still sends a resounding message not only to Hammond but to all municipalities concerning the ramifications of the type of misconduct evidenced in this case. (See [DE403-5], generally, the Affidavit of Hill's counsel, Scott King.) Hill and his attorneys all believe that the proposed settlement, which is unequivocally grounded in the verdict, will substantially advance the important policy goals of Section 1983 litigation, including the goal of deterrence. [DE403-5] Moreover, while Hill continues to disagree with the Defendants on the merits, he represents that he has come to understand the difficulties faced by Hammond in settling this matter. [DE403-5]

Mr. King is a partner in the law firm of King & Murdaugh, LLC, and has been one of Hill's attorneys since 2016, when he was retained to represent Hill in a criminal prosecution wherein he was accused of murder in the 1980 death of Hammond Police officer Larry Pucalik. [DE403-5, ¶¶1-3] Mr. King has been an attorney since December, 1976. [DE403-5,¶4] For the overwhelming bulk of his career, Mr. King has served as a criminal defense attorney. [DE403-5,¶4]

According to Mr. King, the proposed settlement is the appropriate outcome for all involved in this matter. [DE403-5,¶5 and generally] The *vacatur* of the judgment and verdict in this case would have little impact on third parties and would not significantly lessen the impact of the verdict and efforts that were involved in achieving it. [DE403-5,¶5] As articulated more fully in the parties' Joint Motion and this Brief, along with the Defendants, Mr. King does not believe that the judgment in this case could be used by any party as the basis for actual issue preclusion in future litigation. [DE403-5, ¶¶5-7] Simply stated, both of the men wrongly convicted in this matter have fully litigated their claims for those wrongful convictions. [DE403-5, ¶¶5-7] In Mr. King's opinion, a *vacatur* of the verdict and judgment will have no effect on the precedential value of the Court's decision on the motions for summary judgment in this case; that decision and the evidence developed to date in this case will remain regardless of *vacatur.* [DE403-5, ¶¶5-7] Based upon the summary judgment decision; the evidence adduced in discovery and trial; the public and publicized verdict, it is Mr. King's belief that the defendants in this case will face extraordinary political and legal impediments in defending a future case implicating the same or similar misconduct evidenced in this case regardless of whether the verdict and judgment remain. [DE403-5, ¶¶5-7]

There also would not be a settlement without trial and a significant verdict, according to Mr. King. [DE403-5, ¶¶8-9] The Defendants agree, as noted above. Prior to trial and verdict, the parties engaged in settlement negotiations on multiple occasions. [DE403-5, ¶8] Despite the best efforts of the parties, their counsel and the Court's own suggested mediator/Magistrate Judge, the parties were not able to agree upon a settlement amount through no one's fault. [DE403-5, ¶8] The jury's input by its verdict was thus a substantial help in reaching their contingent settlement. [DE403-5, ¶8]

And, even with a settlement agreement, it is Mr. King's opinion that Hammond is subject by state law to constraints to its ability to fund the terms of that agreement. [DE403-5, ¶9] In the absence of such agreement, Hammond is subject to a state statutory and Constitutional debt limitation of two percent (2%) of its net assessed value, a sum of approximately 20 million dollars or less based upon my estimate. [DE403-5, ¶9] In addition, absent a settlement agreement, Hill would be required, after the defendants herein exhausted their appeal rights, to initiate a state action to mandate that Hammond appropriate and fund payment of the judgment, a process adding months, at a minimum, to Hill realizing compensation from this litigation. [DE403-5, ¶9]

As Hill's lead counsel, Mr. King perceived that, although a compromise, the $9,000,000.00 settlement sends a significant message to Hammond and other local governments as to the consequence of the types of misconduct evidenced in this case. [DE403-5, ¶10] Thus, this proposed settlement substantially advances the policy goals of §1983 litigation, including deterrence and compensation for victims of constitutional violations. [DE403-5, ¶10] Such a settlement also would not entice local governments to either allow the occurrence of such violations or risk a future judgment for same particularly where, as here, there was significant press coverage and the expenditure of defense legal fees and costs. [DE403-5, ¶10]

Moreover, Hill's current hardships, as set forth by Mr. King, further justify the relief that the parties seek. [DE403-5, ¶5] According to Mr. King, Hill has suffered and continues to suffer significant hardships that justify vacating the verdict and judgment in this case in order to facilitate the agreed settlement. [DE403-5, ¶11] During the trial in this action, the Court heard evidence of the hardships that Hill endured when he was wrongly convicted and imprisoned at age 17. [DE403-5, ¶12] Since his release from prison in 1998 after serving an aggregate term of 17 and ½ years contin-

21

uously after his November, 1980 arrest, Hill has had intermittent employment while supplementing his income by cutting hair. [DE403-5, ¶13] He worked in 9 different jobs, none for longer than a two year period of time. For much of this time, he was obliged to register as a sex offender for his 1980 conviction. [DE403-5, ¶13] He is currently 60 years of age; has had knee and hip replacement surgery; has lived since 2017 solely from his finance's income and is the father of 3 children. [DE403-5, ¶13] He desires nothing more than to be able to live his remaining years free from financial worry while providing for his family and wishes to realize that goal as soon as reasonably possible. [DE403-5, ¶13]

### III.  CONCLUSION

For the reasons stated in the parties' Joint Motion and this Brief, the combined weight of all of the equities, both public and private, tip the balance overwhelmingly in favor of granting the joint request for *vacatur* of the jury verdict and judgment in this case. [DE401, p. 12] In addition to the substantial $9,000.000.00 settlement that Hill will receive, this litigation will come to an end without further federal court burden at either the appellate or district court level, and the Court and a hypothetical future jury will also avoid having to resolve the parties' disputes in the new *NWI Joint Task Force* case. The parties seek their final peace in all of these matters, and ask that the Court in its wisdom aid them in this quest.

WHEREFORE, the parties jointly request that this Honorable Court enter a final judgment order which: 1) vacates the November 22, 2022 jury verdict, the January 24, 2023 Judgment and the May 31, 2023 Award of Attorney's Fees and Costs in this action in order to fulfill a necessary condition precedent of the parties' combined settlement and, instead; 2) dismisses this matter with prejudice, with each party to bear its own attorney's fees and costs.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By: /s/David C. Jensen
  One of the attorneys for the Defendant,
  City of Hammond

David C. Jensen, #4893-45
Robert J. Feldt, #16311-45
**EICHHORN & EICHHORN, LLP**
2929 Carlson Drive, Suite 100
Hammond, IN 46323
Telephone: 219-931-0560
Facsimile: 219-931-5370

Respectfully submitted,

**LEVINSON & LEVINSON**

By: /s/Shana D. Levinson
  One of the attorneys for the Defendant,
  Michael Solan, Jr.

Donald P. Levinson
Shana D. Levinson
**LEVINSON & LEVINSON**
384 W. 80th Place
Merrillville, IN 46410
Telephone: 219-769-1164
Facsimile: 219-769-0337

23

Respectfully submitted,

**KING & MURDAUGH**

By: /s/Scott King
    One of the attorneys for the Plaintiff,
    James Hill

Scott King
Lakeisha Murdaugh
**KING & MURDAUGH**
9211 Broadway
Merrillville, IN 46410
Telephone: 219-769-6300
Facsimile: 219-769-0633

Respectfully submitted,

**THE REGION LAWYERS, INC.**

By: /s/Russell Brown
    One of the attorneys for the Plaintiff,
    James Hill

Russell Brown
The Region Lawyers, Inc.
9223 Broadway, Suite E
Merrillville, IN 46410
Telephone: 219-750-9380

24

<u>**CERTIFICATE OF SERVICE**</u>

I, David C. Jensen, hereby certify that on the 24th day of August, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

> Scott King
> Lakeisha Murdaugh
> King & Murdaugh
> 9211 Broadway
> Merrillville, IN 46410
>
> Russell Brown
> The Region Lawyers, Inc.
> 9223 Broadway, Suite E
> Merrillville, IN 46410
>
> Donald P. Levinson
> Shana D. Levinson
> Levinson & Levinson
> 122 W. 79th Avenue
> Merrillville, IN 46410

> /s/David C. Jensen
> David C. Jensen